FEDERAL LAND BANK OF COLUMBIA, SOUTH CAROLINA, v. GAINES.

No. 112. Argued November 16, 17, 1933.—Decided December 4, 1933.

*Mr. Peyton R. Evans,* with whom *Messrs. I. M. Bailey, Harry D. Reed,* and *J. S. Massenburg,* and *Miss May T. Bigelow* were on the brief, for petitioner.

*Mr. M. R. McCown* for respondent.

By leave of Court, *Mr. Irving P. Whitehead* filed a brief as *amicus curiae.*

MR. JUSTICE STONE delivered the opinion of the Court.

This suit was brought by respondent in the Superior Court for Polk County, North Carolina, to cancel a mortgage, given by her to petitioner, as invalid for want of consideration. It presents a question of the construction of the Federal Farm Loan Act of July 17, 1916, c. 245, 39 Stat. 360, which was raised and decided upon an agreed statement of facts. Judgment for respondent was affirmed by the Supreme Court of the State, 204 N.C. 278; 167 S.E. 856. The case comes here on certiorari.

On August 16, 1930, respondent applied to petitioner, through the Columbus Farm Loan Association, for a loan secured by mortgage upon her land, located in Polk County. The loan was approved by the Loan Association on October 1, 1930, and on that day respondent was admitted to membership in the Association. In due course she executed a promissory note to petitioner, secured by mortgage upon her land, both of which she delivered to petitioner as required by the provisions of the Federal Farm Loan Act. The note, as the statute commands, bore endorsement of the agreement of the Association to be liable upon it. Petitioner's check for the amount of the loan, less authorized charges, made payable jointly to the Secretary-Treasurer of the Association and respondent, was delivered by petitioner to attorneys of the respondent together with a "closed loan statement." This statement was a detailed report of the loan transaction, including data of the disbursement of its proceeds and of fees charged by the Association to the borrower. The Secretary-Treasurer was to fill out the statement after the loan transaction was completed, procure the borrower's signature to it and return it to the bank. These documents were delivered by the attorneys to the Secretary-Treasurer, who, after the check was duly endorsed

by the payees, deposited it in a bank to the credit of the Association. At the time of the endorsement and before, respondent understood that the check was to be so deposited and the proceeds after collection were to be disbursed by the Association for the purposes for which the loan was procured. The bank, immediately after collection of the check, closed its doors, and the proceeds of the collection, with an exception not now material, have not become available either to the Association or the respondent.

The Supreme Court of North Carolina, construing the provisions of the Federal Farm Loan Act, concluded that the Association, organized under its provisions as an intermediary between the borrower and the petitioner, acted as a " public agent," and that the receipt by it and the deposit of the check for collection and credit, though it was first endorsed by respondent, was not a receipt of the loan by the borrower or in her behalf such as to establish liability of respondent upon her note.

The Federal Farm Loan Act was adopted in response to a national demand that the federal government should set up a rural credit system by which credit, not adequately provided by commercial banks, should be extended to those engaged in agriculture, upon the security of farm mortgages. The report of the Senate Committee which drafted the bill enacted as the Federal Farm Loan Act, Report of Senate Committee on Banking and Currency, No. 144, 46th Cong., 1st Sess., emphasizes as features of the proposed national rural credit system the creation of regional federal land banks under control of the Farm Loan Board. The banks were to make loans to farmers, upon the security of farm mortgages, with funds obtained in large part by the sale to investors of long term bonds. See also Report of House Committee on Banking and Currency, No. 630, 64th Cong. 1st Sess. To adapt the system to local needs and to promote coöperation among bor-

rowers, it was proposed that the loans should be made through local associations controlled by their membership, composed exclusively of borrowers.

These proposals were carried out in the Federal Farm Loan Act by providing for the creation of twelve regional federal land banks, § 4; 12 U.S.C., §§ 671, 683, of which petitioner is one, all under the direction and control of the Federal Farm Loan Board.[1]  § 3; 12 U.S.C., §§ 651, 652. Each has authority to lend money on the security of mortgages on farms within its own district.  § 13; 12 U.S.C., § 781.  The banks are authorized to issue farm loan bonds secured by mortgages taken as security for loans.  They are without authority to make loans " except through National Farm Loan Associations," organized as provided by other sections of the Act, § 14; 12 U.S.C., § 791,[2] or by agents, which are banking institutions organized under state laws.  § 15; 12 U.S.C., § 803.  They may make loans only for specified agricultural purposes, including the payment of existing loans upon the security of farm lands or the purchase of farm lands or equipment for them or their improvement.  § 12, Par. Fourth; 12 U.S.C. § 771.  Loans are made on written applications which are required to

[1] The Farm Loan Board consisted of the Secretary of the Treasury and six members, appointed by the President, § 3; 12 U.S.C., § 652. After the entry of the final judgment in this cause, the Federal Farm Loan Board was abolished and its functions were transferred to the Farm Loan Commissioner, subject to the jurisdiction and control of the Farm Credit Administration, by Executive Order of the President, No. 6084 of March 27, 1933; the name of the officer of the Farm Loan Commissioner was afterward changed to that of Land Bank Commissioner, by Act of June 16, 1933, Session Laws, First Session 1933, 273.

[2] By Act of March 4, 1933, Session Laws, Second Session, 1932, 1933, pp. 1547, 1548, after the loan transaction in the present case, this section was amended so as to permit loans to be made either through National Farm Loan Associations or direct to borrowers, as provided in § 7. § 7 was also amended so as to provide for direct loans in localities where no Farm Loan Associations have been organized.

designate the purpose for which the loan is to be used and the borrower is required to agree that the loan shall be used for those purposes. § 12, Par. Eighth; 12 U.S.C., § 771.

National farm loan associations are local associations, organized under charters granted by the Federal Loan Board, § 7; 12 U.S.C., §§ 711, 719. Their membership is restricted to those who are borrowers from federal land banks. They are controlled by boards of directors elected by their members, who, with the exception of the Secretary-Treasurer, the chief executive officer of the association, serve without compensation. §§ 7, 8; 12 U.S.C., §§ 712, 713, 733. They are also authorized to charge fees to borrowers, limited in amount, § 11; 12 U.S.C., § 761, " to endorse and thereby become liable for the payment of mortgages taken from its shareholders by the Federal Land Bank of its district," § 11; 12 U.S.C., § 761, and to receive from the federal land bank " funds advanced " by the land bank and to deliver them to its members on receipt of first mortgages. §§ 7, 11; 12 U.S.C., §§ 720, 761. By § 14; 12 U.S.C., § 714, the Secretary-Treasurer is the custodian of the funds of the association, which are required to be deposited in a bank designated by the board of directors. He is required to " assure himself " that the loans made through the National Farm Loan Association of which he is a member are applied to the purposes set forth in the application of the borrower," to pay over to borrowers all sums " received for their account from the Federal Land Bank upon first mortgage," and acting under the direction of the association " to collect, receipt for and transmit to the Federal Land Bank payments of interest, amortization, installments or principal arising out of loans made through the Association," and to report to the land bank of the district any failure of the borrower to comply with the terms of the application or mortgage, and any delinquent taxes on land mort-

gaged to the bank. Expenses of the Secretary-Treasurer are payable from the funds of the association, and if such funds are not available, by levy of assessment on the members. § 7; 12 U.S.C., § 715.

Borrowers from federal land banks through national farm loan associations are required to subscribe and pay for shares of stock in the association to an amount equal to 5% of the face of the loan, which stock is to be paid off at par and retired upon full payment of the loan. § 8; 12 U.S.C., § 733. The cost of these shares may be included in the loan. § 9; 12 U.S.C., § 742. The association in turn is required " whenever " it " shall desire to secure for any member a loan on first mortgage from the Federal Land Bank of its District " to subscribe and pay for capital stock of the lending federal land bank in like amount, and similarly this stock is to be retired upon payment of the mortgage loan. § 7; 12 U.S.C., § 721.

In the present loan transaction, carried out in strict conformity with the statute, it was plainly contemplated that petitioner was to be the lender, and as lender it was to become the owner of the note and the mortgage, in which it was named, respectively, as payee and mortgagee. Respondent, as maker of the note, and the Association, by its endorsement agreeing to be liable for its payment, were both to be obligated to pay the loan. As between the two, the Association was in the position of a surety or guarantor, entitled to be exonerated by the mortgage security and protected to some extent by the 5% stock subscription exacted of respondent. If the transaction were unaffected by the provisions of the Farm Loan Act, it would require no argument or citation of authority to support the conclusion that the delivery of the note and mortgage to the lender, and the receipt of the check from the lender, payable to the obligors upon the mortgage indebtedness, and their endorsement and the collection of it, would establish their liability for the pay-

ment of the loan, regardless of what might become of the proceeds.

The state court rested its decision on the characterization of the Association as a public agent, but it did not hold that the Association was in any sense an agent for the lender bank. It could not well have done so, for neither the provisions of the Farm Loan Act nor the particular circumstances which attended the loan in the present case gave to the petitioner any right of control over the Association or any power to recall the check or its proceeds after its delivery and collection. The Association was controlled by directors, elected by its own members, who, like the respondent, were borrowers. After the check was delivered to the Association it passed completely from the control of the lender and into the exclusive control of the payees, who were the obligors of the mortgage indebtedness.

It is true that both the petitioner and the Association were, in a broad and general sense, public agencies or instrumentalities to carry out a policy of the government—the extension of credit to those engaged in agriculture to be availed of in the furtherance of agricultural undertakings. But those purposes could only be achieved through loans made to private individuals. The borrower is under no legal compulsion to borrow. If he takes the benefit of the privilege extended by the statute he can do so only in compliance with its requirement that he shall join, with himself as obligor, the local coöperative association of which he is a member. This supplies a strong incentive on the part of the associations to perform the duties commanded by the statute looking to the safety and security of the loan and, as agreed by the borrower and required by the statute, its disbursement for the purposes for which it is made. By applying for the loan and delivering to the lender her mortgage and note, endorsed by the Association, in compliance with the Act,

respondent consented in advance to the procedure for creating and disbursing the loan which the statute prescribes. She renewed that consent when her endorsement of the check was made, with full knowledge that the Association, her co-obligor, was to deposit the check to its credit and disburse the proceeds for the purposes for which the loan was made. This consent could not be affected by the closed loan statement which it was intended she should later sign. The statement was to be merely a confirmation or report of what had gone before. The endorsement of the check was the crucial act, for it drew the funds from the control of the petitioner and dedicated them irrevocably to the purposes for which the loan had been secured.

We can perceive no inconsistency between the public ends to be effected and the purpose plainly exhibited by the statute and the conduct of the parties that they should occupy the position of co-obligors upon the loan indebtedness, with the mutual understanding that one of them, the Association, was to disburse the proceeds of the loan for purposes agreed upon. And we can discern no difference between the legal consequence of their acts and that which would have ensued had respondent consented that the loan be received and disbursed by any third person who afterward had lost the money, or if she had, herself, taken the endorsed check and deposited it to her credit in the insolvent bank. If we thought this conclusion more doubtful, we should regard as persuasive the fact that a different conclusion would break down the scheme of the Act to make the mortgages taken by the federal land banks available as collateral for federal land bank bonds sold to investors. Its operation would be seriously impaired if such use of the mortgages taken must await the long period which may often elapse after the lending bank has paid out its money, and before the disbursement of it is completed by the local association.

256

We conclude that there was no failure of consideration for the mortgage and that the judgment of the state court must be

*Reversed.*