JACOB LEUTHOLD v. DES MOINES JOINT STOCK LAND
BANK OF DES MOINES, IOWA.[1]

April 9, 1936.

No. 30,762.

Sasse, French & Dunnette and Allen Whitfield, for relator.
Christensen & Ronken, for respondent.

HOLT, JUSTICE.

Certiorari to review an order granting respondent an extension of time to redeem from a mortgage foreclosure sale.

In 1924 Ralph Maynard and wife mortgaged their farm in Dodge county, this state, to relator. Thereafter respondent became the owner of the farm. Payments stipulated in the mortgage to be made were not made, and it was duly foreclosed by advertisement. At the sale conducted by the sheriff on September 22, 1934, relator bid in the farm for $9,000 and received the sheriff's certificate of sale, which was duly recorded the same day. Within a year from the date of sale respondent applied to the district court of Dodge county for extension of the time of redemption. The sole question for decision is whether L. 1935, c. 47, the mortgage moratorium act, excepts mort-

[1] Reported in 266 N. W. 450.

gages from its operation which are taken and held by defendant pursuant to the federal farm loan act of July 17, 1916.

L. 1935, c. 47, after a recital of the conditions justifying its enactment, continues:

"Now THEREFORE, Be it enacted by the Legislature of the State of Minnesota:

"The provisions of this act shall not apply to any mortgage while such mortgage is held by the United States or by any agency, department, bureau, board or commission thereof, as security or pledge of the maker, its successors or assigns, nor shall the provisions of this act apply to any mortgage held as security or pledge to secure the payment of a public debt or to secure payment of the deposit of public funds."

The foregoing exception was also in L. 1933, c. 339, 3 Mason Minn. St. 1934 Supp. §§ 9633-1 to 9633-21, our first mortgage moratorium act.

The act of congress under which defendant was organized and is operating is federal farm loan act of July 17, 1916 (39 St. 360, c. 245, 12 USCA, §§ 641 to 1021), as amended and as affected by Executive Order 6084 of March 27, 1933. The act is entitled:

"An Act to provide capital for agricultural development, to create standard forms of investment based upon farm mortgage, to equalize rates of interest upon farm loans, to furnish a market for United States bonds, to create Government depositaries and financial agents for the United States, and for other purposes."

The administration of the act was placed under a Federal Farm Loan Bureau under the supervision of the Federal Farm Loan Board, consisting of the secretary of the treasury and four members appointed by the President by and with the advice and consent of the senate. By the subsequent amendment of the act the bureau and board are now designated as Farm Credit Administration, of three commissioners. A joint stock land bank is, as far as here material, governed by the same provisions in this act, as amended, as a federal land bank. 12 USCA, § 813. In calling attention to provi-

sions bearing on the question before us reference is to the law as found in the sections of 12 USCA. Loans made by defendant must be secured by first mortgages on farm land. §§ 781 and 791. The mortgages it takes and holds are tax-exempt as government instrumentalities as provided in § 931:

"First mortgages executed to Federal land banks, or to joint-stock land banks, and farm loan bonds issued under the provisions of this chapter, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation."

In Federal Land Bank v. Crosland, 261 U. S. 374, 43 S. Ct. 385, 67 L. ed. 703, 29 A. L. R. 1, it was held that such a mortgage was exempt from the state mortgage registration tax because it was a government instrumentality, reversing a contrary ruling in Cros-land v. Federal Land Bank, 207 Ala. 456, 93 So. 7. By § 701 all federal land banks and joint stock land banks, when designated by the secretary of the treasury, "shall be depositaries of public money, * * *; and they may also be employed as financial agents of the Government; and they shall perform all such reasonable duties, as depositaries of public money and financial agents of the Government, as may be required of them." In Smith v. Kansas City T. & T. Co. 255 U. S. 180, 41 S. Ct. 243, 65 L. ed. 577, the question of such banks being properly federal fiscal agencies was settled and the conclusion reached that as such congress could exempt them from taxation. The decision goes very fully into the purposes of the act, as does also the court in Federal Land Bank v. Gaines, 290 U. S. 247, 54 S. Ct. 168, 78 L. ed. 298. The mortgages taken by a bank of this character may be used as collateral security for farm loan bonds issued by it; but in such cases the bank must transfer the mortgages in trust to the registrar. § 853. In making the exemption in our moratorium acts the legislature may well have intended to secure to the landowners of this state the continued aid of federal land banks and of joint stock land banks operating under the federal act, for by §§ 971 to 973 the land bank commis-

sioner has the duty of examining the laws of every state and informing the Farm Credit Administration whether in his judgment they are such as to assure the holder of first mortgages adequate safeguards as against loss in the event of default. In his judgment the extension of the time of redemption may lessen the adequacy of the protection afforded by a mortgage if subject to moratorium legislation.

As further bearing upon the question whether mortgages taken by banks existing under the federal farm loan act of July 17, 1916, as amended, are instrumentalities of the federal government, in the hands of such banks, so that they, as such holders may be regarded as an agency of the United States within the meaning of L. 1935, c. 47, we cite: Hartford Production Credit Assn. v. Clark, 118 Conn. 341, 172 A. 266; Federal Land Bank v. State Highway Dept. 172 S. C. 174, 173 S. E. 284; Ellingson v. Iowa Joint Stock Land Bank, 64 S. D. —, 264 N. W. 516; Dallas Joint Stock Land Bank v. Ballard (Tex. Civ. App.) 74 S. W. (2d) 297.

The Ellingson case from South Dakota is squarely in point, the exemption from the mortgage moratorium act of that state·being of mortgages held "by the United States Government, or any agent, agency, or instrumentality of the United States." Upon the cases of Smith v. Kansas City T. & T. Co. 255 U. S. 180, and Federal Land Bank v. Crosland, 261 U. S. 374, the court held the mortgage, owned by the joint stock land bank, there defendant, excepted from the operation of the mortgage moratorium act of that state. The Texas court of civil appeals, in an exhaustive opinion, in Dallas Joint Stock Land Bank v. Ballard (Tex. Civ. App.) 74 S. W. (2d) 297, came to the same conclusion as to the exception made by the Texas mortgage moratorium law of mortgages held by the land banks; and, having arrived at that conclusion, the court refused to pass on the constitutionality of the law. However, on appeal, the supreme court of Texas affirmed; but not on the ground that mortgages held by such bank were exempted from the operation of their moratorium act, but that the act itself infringed the state constitution prohibiting the impairment of contract rights. Ballard v. Dallas Joint Stock Land Bank, 124 Tex. 113, 76 S. W. (2d) 1042.

This is a different conclusion from that of this court in respect to our mortgage moratorium act (L. 1933, c. 339) in Blaisdell v. Home B. & L. Assn. 189 Minn. 422, 249 N. W. 334, 86 A. L. R. 1507, affirmed in 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 413, 88 A. L. R. 1481.

It is suggested that Federal Land Bank v. Priddy, 295 U. S. 229, 233, 55 S. Ct. 705, 707, 79 L. ed. 1408, indicates a tendency to de part from prior decisions by the use of this language:

"Joint stock land banks are privately owned corporations, organ ized for profit to their stockholders through the business of making loans on farm mortgages.  § 16.  There is nothing in their organ ization and power to suggest that they are governmental instru mentalities."

It is well to note that the claim there made and determined against the bank was whether jurisdiction could be obtained by attachment of its property.  The court, however, also said [295 U. S. 231]:

"* * * it is sufficient that this Court has already had occasion to consider the organization and functions of federal land banks, and to declare that they are instrumentalities of the federal gov ernment, engaged in the performance of an important governmental function.  Smith v. Kansas City T. & T. Co. 255 U. S. 180, 41 S. Ct. 243, 65 L. ed. 577; Federal Land Bank v. Gaines, 290 U. S. 247, 54 S. Ct. 168, 78 L. ed. 298."

We are not confronted with the question whether the legislature has the power to extend the period of redemption of mortgages taken and held by a federal land bank; but whether the legislature by the first above quoted part of our mortgage moratorium acts intended to except or exclude such mortgages held by banks operat ing under the federal farm loan act of July 17, 1916, as amended, from the operation of the moratorium acts.  We are satisfied that the intention was to exclude such mortgages therefrom.  The legis lature recognized that the federal government by the farm loan act caused the federal land banks and joint stock land banks to be created for the very purpose of ameliorating the condition of the farmers.  Our moratorium acts were for a like purpose.  Naturally

the legislature did not desire to hinder in any way the farmers of the state from reaping whatever benefit that could be derived from the acts of congress. The legislature, no doubt, was aware of §§ 971 to 973, 12 USCA, and did not wish an unfavorable report from the United States land bank commissioner as to the existence of any law affecting the security of first mortgage loans held, by the federal land bank. At the time our mortgage moratorium act of 1933 was passed bench and bar were divided as to whether it infringed the federal and state constitution prohibiting the impairment of contracts, and we may well see in the exception an attempt of the legislature to ward off an attack in the courts grounded on the claim that instrumentalities of the federal government were impaired.

The order is reversed.

HILTON, JUSTICE (dissenting).

I dissent. The exemption provision in the Minnesota mortgage moratorium act reads that the provisions of the act "shall not apply to any mortgage while such mortgage is held by the United States or by any agency * * * thereof." The South Dakota mortgage moratorium act, of which the majority opinion makes mention, exempts from the operation of its provisions mortgages held by "the United States Government, or any *agent,* agency, or *instrumentality* of the United States." (Italics mine.) In view of the fact that the provision is more inclusive and broader than the exemption provision in the Minnesota act, it would seem that the case of Ellingson v. Joint Stock Land Bank, 64 S. D. —, 264 N. W. 516, is not conclusive of the question before us.

The Texas mortgage moratorium act (Vernon's Ann. Civ. St. art. 3804, § 3) provided: "The provisions of this Act shall not apply to loans due the Federal Government, or any agency thereof." That is almost identical with the exemption provision in our act. In Dallas Joint Stock Land Bank v. Ballard (Tex. Civ. App.) 74 S. W. (2d) 297, 299 (affirmed on other grounds, 124 Tex. 113, 76 S. W. [2d] 1042), the court stated:

"It is contended that appellant [Joint Stock Land Bank] is an agency of the federal government within the purview of such ex-

emption provision. A joint stock land bank is undoubtedly, for some purposes, an agency of the federal government. * * * We are inclined to doubt, however, whether the agency existing by such authority alone would bring it within the exemption."

That court exempted the joint stock land banks from the operation of the act but did so under the feeling that the legislature so intended despite the fact that the language used was not broad enough to accomplish that purpose.

In no case decided by the United States Supreme Court has the relationship existing between the federal government and joint stock land banks been determined directly. There have been indications one way or the other but no absolute determination, although the federal land banks (a separate group of institutions) definitely have been held to be federal agencies. Smith v. Kansas City T. & T. Co. 255 U. S. 180, 41 S. Ct. 243, 65 L. ed. 577; Federal Land Bank v. Gaines, 290 U. S. 247, 54 S. Ct. 168, 78 L. ed. 298; Federal Land Bank v. Crosland, 261 U. S. 374, 43 S. Ct. 385, 67 L. ed. 703, 29 A. L. R. 1.

In Federal Land Bank v. Priddy, 295 U. S. 229, 231, 55 S. Ct. 705, 706, 79 L. ed. 1408 (1935), the court stated:

"* * * it is sufficient that this Court has already had occasion to consider the organization and functions of *federal land banks,* and to declare that they are instrumentalities of the federal government * * *." (Italics mine.)

The court there definitely limited the statement to federal land banks. In the same opinion, a few sentences later, the court stated [295 U. S. 233]:

"*Joint stock land banks* are privately owned corporations, organized for profit to their stockholders through the business of making loans on farm mortgages. § 16. There is nothing in their organization and powers to suggest that they are governmental agencies." (Italics mine.)

Those two statements appearing in the same opinion leave no doubt in my mind as to the relationship existing between joint stock land banks and the federal government.

In a later case, Louisville Joint Stock Land Bank v. Radford, 295 U. S. 555, 55 S. Ct. 854, 79 L. ed. 1593, 97 A. L. R. 1106 (1935), subsec. (s) added to § 75 of the bankruptcy act (11 USCA, § 203) by the Frazier-Lemke act (passed June 28, 1934), was held unconstitutional as depriving the Louisville Joint Stock Land Bank of property without compensation in violation of the fifth amendment to the federal constitution. The provisions of the Frazier-Lemke act differ materially from those of our moratorium law. If joint stock land banks act only as agents of the federal government in the acquisition of their mortgages, as the majority opinion indicates, then it would be a novel procedure to allow said agents to complain that the principal had permitted the taking of property, acquired by the agent as agent, without due process of law. The fact that the federal government was not permitted to grant the type of relief provided by the Frazier-Lemke act is an indication that the joint stock land banks do not act simply as agents of the federal government in the acquisition of mortgages. Ordinarily a principal can deal with his own property as he chooses regardless of the fact that he might have obtained it through an agent. The Radford case and the Priddy case seem determinative of the proposition that joint stock land banks are not federal agencies. The fact that federal land banks are should not affect the situation.

The purpose of the mortgage moratorium act was to relieve the distress caused by a depreciation in values. Blaisdell v. Home B. & L. Assn. 189 Minn. 422, 249 N. W. 334, 86 A. L. R. 1507. This purpose certainly would not be attained were the use of the word "agency" in the exemption provision given the interpretation laid down in the majority opinion. Just how far is that exemption to be extended? In Wheeler v. Greene, 280 U. S. 49, 51, 50 S. Ct. 21, 74 L. ed. 160, the national bank act, R. S. § 5234, was called "the prototype" of the farm loan act under which the joint stock land banks are authorized. Undoubtedly the legislature intended to exempt only such federal agencies as The War Finance, Emergency Fleet, Housing, Reconstruction Finance, Subsistence Homestead, and Tennessee Valley Authority, corporations which are federal agencies in every sense of the word. See 48 Harv. L. Rev. 775.

It was held in Home B. & L. Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 413, 88 A. L. R. 1481, that the moratorium act did not impair the integrity of the mortgagor's indebtedness nor injure substantial property rights. At the time the exemption provision with which we are concerned was enacted (March, 1935), there was no speculation as to the validity of the act, it having been upheld in the Blaisdell case. Thus the United States land bank commissioner would not have just grounds for turning down applications for loans secured by mortgages on Minnesota farms merely because there was a moratorium act in this state. In at least three instances mortgage moratorium acts of other states have been resorted to successfully for the purpose of obtaining extensions of the time within which to redeem from foreclosure sales made under mortgages held by joint stock land banks. Young v. Union Joint Stock Land Bank, 266 Mich. 83, 253 N. W. 225; Des Moines Joint Stock Land Bank v. Nordholm, 217 Iowa, 1319, 253 N. W. 701; Virginian Joint Stock Land Bank v. Hudson, 266 Mich. 644, 254 N. W. 234; cf. Phoenix Joint Stock Land Bank v. Dewey (D. C.) 8 F. Supp. 678.

I think the order should be affirmed.

DEVANEY, CHIEF JUSTICE (dissenting).

I agree with the dissent.