**PLANTERS TRUST AND SAVINGS BANK**

v.

**W.T. LANGLEY, et ux.**

**W.T. LANGLEY, et ux.**

v.

**PLANTERS TRUST AND SAVINGS BANK OF OPELOUSAS, et al.**

Civ. A. Nos. 83–2612 L, 84–0557 L.

United States District Court, W.D. Louisiana, Lafayette-Opelousas Division.

Aug. 12, 1985.

William C. Shockey, Baton Rouge, La., for W.T. and Mary Langley.

David S. Rubin, Baton Rouge, La., for Federal Deposit Ins. Corp.

W. Shelby McKenzie, Baton Rouge, La., for Federal Land Bank of Jackson.

## MEMORANDUM RULING

DUHE, District Judge.

This matter is a consolidation of several suits arising out of the 1984 collapse of the Planters Trust and Savings Bank in Opelousas. The Planters Bank brought an action against W.T. Langley and Mary Langley on a promissory note. The Langleys asserted fraud in the inducement as an affirmative defense and brought a separate action for damages against the bank and various individuals, including one Elmer Landry. The Langleys subsequently amended that action to add the Federal Land Bank of Jackson ("FLBJ") as a co-defendant. Elmer Landry promptly cross-

claimed against the FLBJ. The FLBJ in turn counterclaimed against the Langleys on a second promissory note.

The FLBJ now moves for summary judgment against W.T. and Mary Langley. The FLBJ also moves for judgment on the pleadings against Elmer Landry's cross-claim.

## I. THE MOTION FOR SUMMARY JUDGMENT AGAINST THE LANGLEYS

### A. The Langleys' Liability on the Note

W.T. and Mary Langley executed a $1.35 million promissory note payable to the Federal Land Bank of New Orleans (which subsequently changed its name to the Federal Land Bank of Jackson). This loan was secured by a mortgage on certain property which was purchased with the loan. That note is now in default, with interest accruing daily.

The Langleys assert as an affirmative defense to the note, and as a basis for their damage claims against the FLBJ, that material misrepresentations amounting to fraud in the inducement were made to them by Elmer Landry, the president of the Federal Land Bank Association of Opelousas. The question thus posed is whether Elmer Landry, by virtue of his office as president of the Opelousas Federal Land Bank Association, was the statutory agent of the FLBJ.

#### 1. Statutory Agency

Federal land banks ("FLBs") and federal land bank associations ("FLBAs") are distinct entities. The FLBJ was originally established pursuant to § 4 of the Federal Farm Loan Act of 1916 and continued under the Farm Credit Act of 1971 (12 U.S.C. § 2011 et seq.). FLBAs are chartered under § 7 of the Farm Loan Act of 1916, as revised by the Farm Credit Act of 1971 (12 U.S.C. § 2031 et seq.).

FLBAs are local corporations, and shareholding is limited to borrowers. As an association, it recommends loan applications to the appropriate FLB. That FLB in turn exercises certain limited supervisory functions over the FLBA. 12 U.S.C. 2012(13) provides that a FLB will:

"Approve the salary scale of officers and employees of the Federal land bank associations and the appointment and compensation of the chief executive officer thereof and supervise the exercise of such associations [sic] of the functions vested in or delegated to them."

12 U.S.C. § 2020 provides that FLBs are to make loans through FLBAs unless there is no active association for the territory where the immovable property subject to the loan is located.

In the facts at bar, the Langleys' loan was processed through the Baton Rouge FLBA, and made by the FLB of New Orleans (which, of course, has since become the FLBJ). Nevertheless, Elmer Landry was involved in the negotiations leading up to the loan even though he had no reason or authority to be so involved in his capacity as president of the FLBA of Opelousas.

There is very little authority on the question of whether FLBAs are the statutory agents of FLBs. Supporting that proposition is dicta from *Miller v. Federal Land Bank of Spokane*, 587 F.2d 415 (9th Cir. 1978):

"As we have seen, the Railroad's Check assigns $4,708.00 to the value of the land taken, and in the Millers' complaint they assert that two officers of the Association in Billings agreed to accept as the Bank's portion of any settlement one-half of the amount paid for the land taken and to waive whatever claim the bank might have to any part of the amount assigned to damages to the remaining lands. The Bank does not admit that such an agreement was made but ... *we think that if such an agreement had been made in this case, it would be a reasonable agreement and one enforceable against the Bank.*

The record indicates that borrowers customarily apply for loans through the local association. Indeed, they are required to do so and to become members themselves, and the loans are 'serviced' by the associations. Under these circum-

stances, it appears to us that the Association had actual, or at least ostensible, authority to vary the policy in the case of the Miller loan. If, therefore, on a trial, the Millers can persuade a fact finder that the officers of the Association did agree, as the Millers claim, then the Bank can be held to that bargain, and it would be entitled to receive only $2,354.00 out of the settlement and the Millers would be entitled to the balance." 587 F.2d at 423 (emphasis added).

On the other hand, there is a 1933 Supreme Court case, *Federal Land Bank of Columbia v. Gaines*, 290 U.S. 247, 54 S.Ct. 168, 78 L.Ed. 298, in which the Court stated:

> "The State court rested its decision on the characterization of the association as a public agent, but *it did not hold that the association was in any sense an agent for the lender bank. It could not well have done so, for neither the provisions of the Farm Loan Act* nor the particular circumstances which attended the loan in the present case gave to the [FLB] any right of control over the association or any power to recall the check after its delivery and collection. The association was controlled by directors, elected by its own members, who, like the respondent were borrowers." 290 U.S. at 254, 54 S.Ct. at 171 (emphasis added).

This case was decided under the provisions of the Farm Loan Act of 1916. Although this act has been superceded by the Farm Credit Act of 1971, the Court has failed to discover any provisions of the latter which would effectively overrule *Gaines.* See also *Federal Land Bank of New Orleans v. Jones*, 456 So.2d 1 (Ala. 1984), wherein it was squarely held that FLBAs are not the statutory agents of FLBs.

This Court is compelled to hold that FLBAs are not the statutory agents of FLBs. The command of *Gaines* is clear, and the Congress having failed in the Farm Credit Act of 1971 to provide an unequivocal statutory agency relationship between FLBs and FLBAs, this Court is not empowered to create one.

The Langleys also argue that even if the officers of FLBAs are not the statutory agents of FLBs, in the facts of this case Elmer Landry was the agent-in-fact of the FLBJ.

### 2. Agency-In-Fact

■ Under Louisiana law, an agency relationship is created by either express appointment of a mandatory under Civil Code Article 2985 or by implied appointment arising from apparent authority. *Robertson Advertising Service v. Winnfield Life Insurance Co.*, 453 So.2d 662 (La.App. 5th Cir.1984). An express agency is created by the written or oral agreement between the parties. *AAA Tire and Export, Inc. v. Big Chief Truck*, 385 So.2d 426 (La.App. 1st Cir.1980). However, *a mandate must be express and special when it is for the purpose of contracting a loan* or to acknowledge a debt. Louisiana Civil Code Article 2997. See also *Ward v. Pennington*, 434 So.2d 1131 (La.App. 1st Cir.1983). There being no evidence of any written or oral agreement between the FLBJ and Elmer Landry appointing the latter as FLBJ's mandatory, the FLBJ is entitled to summary judgment.

■ Even if an agency relationship could be created by implied appointment for the purpose of contracting a loan, in the facts at bar there is no genuine issue of material fact as to whether an implied agency has been established. To establish an implied agency, there must be a showing that the FLBJ, as principal, made some manifestation to the Langleys, *and* (2) the Langleys reasonably relied upon Landry's purported authority as a direct consequence of the FLBJ's representations. *Cheramie v. Mt. Airy Refining Co.*, 708 F.2d 156, 158 (5th Cir.1983). There is no evidence of any communication from the FLBJ to the Langleys pertaining to Elmer Landry. The only evidence, as such, is the Langleys' allegations about Landry's purported statements. Agency, though, "may not be established

by the words of the purported agent." *Cheramie, Id.*

Since Elmer Landry was not the statutory agent or agent-in-fact of the FLBJ, the Langleys' affirmative defense of fraud in the inducement fails and the FLBJ's motion for summary judgment as to the Langleys' liability on the note will be granted.

### B. The Langleys' Delictual Claims Against FLBJ

The Langleys' delictual claims against the FLBJ are based on the purported misrepresentations of Elmer Landry. As discussed above, however, there was no agency relationship between FLBJ and Landry which would permit imputing Landry's torts to the FLBJ. Accordingly, movant's motion for summary judgment against the Langleys' delictual claims will be granted.

### II. THE FLBJ'S MOTION FOR JUDGMENT ON THE PLEADINGS

The FLBJ now moves pursuant to FRCP 12(c) for judgment on the pleadings against Elmer Landry's cross-claim. Such a motion can be granted only if there is no issue of material fact and if the pleadings show that the defendant is entitled to prevail as a matter of law. For purposes of this motion, all well-pleaded factual allegations in the plaintiff's complaint must be assumed to be true. *DreFchinski v. Regan,* 589 F.Supp. 1516 (W.D.La.1984).

Elmer Landry's cross-claim against the FLBJ provides "in the event that plaintiffs obtain any relief against this defendant [Elmer Landry] based upon the actions of the FLBJ, then Elmer Landry is entitled to recover from the FLBJ the full amount of any such relief granted plaintiffs." There is no factual or legal explanation for this assertion. Nor is there any claim of wrongful conduct on the part of the FLBJ.

The motion is well taken. Furthermore, it is unopposed. Accordingly, it will be granted.