FEDERAL DEPOSIT INSURANCE
CORPORATION, et al.,
Plaintiffs-Appellees,

v.

W.T. LANGLEY and Mary Ann Grimes
Langley, Defendants-Appellants.

No. 85–4738.

United States Court of Appeals,
Fifth Circuit.

June 25, 1986.

See also, 5th Cir., 792 F.2d 541.

William C. Shockey, Thomas D. Fazio, Baton Rouge, La., for defendants-appellants.

David S. Rubin, Baton Rouge, La., for plaintiffs-appellees.

W. Shelby McKenzie, Baton Rouge, La., for Fed. Land Bank of Jackson.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

W.T. and Mary Ann Grimes Langley (the "Langleys") appeal from the district court's final judgment, pursuant to Fed.R. Civ.P. 54(b), in favor of the Federal Land Bank of Jackson ("FLBJ"). The district court held that the FLBJ is not bound by the misrepresentations and omissions of the president of a Federal Land Bank Association ("FLBA" or "Association"). The Langleys allege that they borrowed money from FLBJ, based on the misrepresentations and omissions of the Association's president, Elmer Landry. Landry is the former president of the FLBA of Opelousas; the loan actually obtained, however, was secured through the FLBA of Baton Rouge.[1] Because we find no statutory,

---

1. As it is more fully presented *infra* at II, the Federal Land Banks and the Associations are distinct and separate entities. The Associations function in the farm credit system by accepting

express, or implied authority to Landry from the FLBJ which would bind the FLBJ for Landry's actions, we affirm the judgment of the district court.

## I. BACKGROUND [2]

In late 1980, the Langleys executed a $1.35 million promissory note payable to the Federal Land Bank of New Orleans.[3] The note was secured by a first mortgage on the property, a farm in Point Coupee Parish, Louisiana, purchased in part with the proceeds of the note. The note is now in default, with interest accruing daily.[4]

On October 18, 1983, the Langleys filed a complaint in federal district court alleging, *inter alia*, that Elmer Landry, former president of the FLBA of Opelousas, fraudulently induced the Langleys to sign the $1.35 million note to FLBJ. The alleged misrepresentations and omissions included the number of acres and mineral rights in the property purchased with the loan proceeds, along with allegations of misrepresentations concerning the terms of the loan. The Langleys amended their claim to include the FLBJ as a defendant. The FLBJ counterclaimed for the amount of the note with interest, and the Langleys asserted former president Landry's alleged fraud as an affirmative defense to the FLBJ's counterclaim.

The undisputed facts show that the Langleys signed an application for a loan through the FLBA of Baton Rouge, rather than the FLBA of Opelousas. The loan application was approved by FLBJ. The Langleys concede, as they must, that the FLBAs are distinct corporate entities from Federal Land Banks. *See infra* at II. Deposition testimony established that former president Landry identified himself to the Langleys as the president of the Opelousas FLBA. The record also establishes that the Langleys were aware at the time of the loan transaction that their application was to be made through the Baton Rouge Association (rather than through the Opelousas Association) and that the FLBJ was the legal entity that would loan the money to the Langleys.

Based on these undisputed facts, the district court entered summary judgment in favor of the FLBJ. *Planters Trust & Savings Bank v. Langley*, 615 F.Supp. 751 (W.D.La.1985).

## II. DISCUSSION

The Langleys seek to impute former president Landry's alleged misrepresentations to FLBJ. Thus, the Langleys argue that former president Landry acted as FLBJ's agent in the loan transaction. To support this contention, the Langleys rely on certain statutory provisions creating the Federal Land Banks and the Federal Land Bank Associations, arguing that these provisions establish that officers of the Associations are statutory agents of the Federal Land Banks such as FLBJ. As the district court noted, 615 F.Supp. at 753, however, Federal Land Banks and the Federal Land Bank Associations are distinct and separate entities. *Federal Land Bank of Columbia v. Gaines*, 290 U.S. 247, 250–51, 54 S.Ct. 168, 169, 78 L.Ed. 298 (1933). The Federal Land Banks were originally established pursuant to section 4 of the Federal Farm

applications for loans and performing other functions delegated to them by the Federal Land Banks. While an Association performs functions similar to those performed by other Associations, it should be noted that the Associations are distinct from one another. Thus, the FLBA of Opelousas consists of different shareholder-borrowers, has separate officers and directors, and serves a geographic territory distinct from the FLBA of Baton Rouge.

2. This case was originally consolidated with No. 85–4549 on appeal. Both this case and No. 85–4549 stem from summary judgments in sim-

ilarly consolidated proceedings in the district court. This Court is issuing separate opinions in the two consolidated appeals.

3. The Federal Land Bank of New Orleans subsequently changed its name to the Federal Land Bank of Jackson. Since the two names are for the same institution, this opinion refers to the bank as "FLBJ."

4. The Langleys also obtained a loan from the Planters Trust and Savings Bank to purchase the property. *See FDIC v. Langley*, 792 F.2d 541 (5th Cir. June 25, 1986).

Loan Act, Pub.L. No. 158, § 4, 39 Stat. 360, 362 (1916). The FLBAs were originally created by section 7 of the Federal Farm Loan Act and were continued in the Farm Credit Act of 1971, Pub.L. No. 92–181, § 1.13, 85 Stat. 587 (1971) (codified in 12 U.S.C. § 2031). In creating these separate legal entities of borrower-owned organizations, Congress declared, "It is the objective of this [Act] to continue to encourage farmer- and rancher-borrowers participation in the management, control, and ownership of a permanent system of credit for agriculture...." 12 U.S.C. § 2001(b). Consequently, the only persons eligible to own stock in the Associations are the borrowers. 12 U.S.C. § 2034. The Associations are governed by boards of directors elected by their shareholders-borrowers. 12 U.S.C. §§ 2032, 2033. The Associations function in the farm credit system by accepting applications to the Federal Land Bank for the district in which an Association is located.[5] Thus, the Supreme Court in *Gaines*, noting this separate nature of the Associations from the Federal Land Banks, held that an Association could not be deemed the agent of a Federal Land Bank in disbursing the proceeds of a loan. 290 U.S. at 254, 54 S.Ct. at 171. *See also Federal Land Bank of New Orleans v. Jones*, 456 So.2d 1 (Ala.1984).

■ The Langleys recognize the applicability of *Gaines* but seek to distinguish this case on the basis of changes in the Federal Land Bank system through the Farm Credit Act of 1971. The Langleys' argument must be rejected. The Langleys rely principally on 12 U.S.C. § 2012(13), which provides that a Federal Land Bank will:

> Approve the salary scale of the officers and employees of the Federal land bank associations and the appointment and compensation of the chief executive officer thereof and supervise the exercise by such associations of the functions vested in or delegated to them.

The Langleys argue that this provision shows that the Federal Land Banks, such as the FLBJ, have sufficient control over Association officers such as to establish that the officers are the agents of the Federal Land Banks. In enacting the 1971 amendments to the farm credit system, however, Congress noted no such radical departure from *Gaines*. *See* H.Rep. No. 92–593, 92nd Cong., 1st Sess., *reprinted in* 1971 U.S.Code Cong. & Ad.News 2091, 2104 (noting that basic character of Federal Land Banks would remain unchanged). Further, the Langleys fail to demonstrate how such a regulatory function converts an officer of an association (which was not even responsible for the loan application) into an agent of the FLBJ. *See also* Federal Farm Loan Act, Pub.L. No. 158, § 7, 39 Stat. 360, 366 (1916) (vesting similar regulatory functions in original act in Federal Farm Loan Board). Similarly, the Langleys' other cited statutory provisions fail to persuade that Landry should be deemed the agent of the FLBJ in the Langleys' loan transaction.

■ Further, the Langleys' argument that the facts of this particular case establish an implied or apparent agency must be rejected. Other than the statutory provisions, the Langleys rely on Landry's business card as an indication that Landry was cloaked with apparent authority to bind the FLBJ in the Langley loan transaction. Even this card, however, clearly identifies Landry as president of the "Federal Land Bank Association" of Opelousas. Moreover, the Langleys were aware at the time of submitting the loan application that the loan was to be made through the FLBA of Baton Rouge, rather than through Landry's FLBA of Opelousas. Under such circumstances and in light of *Gaines*, the Langleys' agency-in-fact argument must be rejected.

Accordingly, the judgment of the district court in favor of FLBJ is

AFFIRMED.

---

5. In some cases, the FLBA approves loans for smaller amounts. *See* 12 C.F.R. § 614.4030 (1985). In the instant case, the Langleys applied for the loan through the FLBA of Baton Rouge, and the loan was approved by FLBJ.