Gary ANDERSON and Fred Anderson, Appellants,

v.

Dale BOEKE, Phyllis Boeke, and Federal Land Bank of Omaha, Appellees.

No. 91–1186.

Court of Appeals of Iowa.

Aug. 27, 1992.

Peter C. Riley of Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

Harry W. Zanville of Zanville Law Offices, Waterloo, for appellees Dale Boeke and Phyllis Boeke.

William S. Vernon of Moyer & Bergman, Cedar Rapids, for appellee Federal Land Bank of Omaha.

Heard by SCHLEGEL, P.J., HABHAB, J., and McCARTNEY, Senior Judge.*

SCHLEGEL, Presiding Judge.

The Andersons appeal the district court's decision granting summary judgment in favor of both the Boekes and the Federal Land Bank of Omaha. The Andersons contend both defendants made fraudulent affirmative misrepresentations and omissions to them when the Andersons inquired about loan financing to purchase real estate. The Andersons argue the district court erred in: (1) determining Dale Boeke, a loan officer of the Federal Land Bank Association of Cedar Rapids, was not an agent of the Federal Land Bank of Omaha; (2) declaring no fiduciary relationship existed between the Andersons and Boeke; and (3) deciding the Andersons suffered no damages arising out of the sale of the real estate.

Oscar and Esther Nebergall owned approximately 687 acres of farmland in Cedar County, Iowa. In February 1984 the Hills Bank and Trust Company was appointed conservator of Nebergalls and, with court approval, took over the role of lender to Nebergalls. After Oscar died in June 1984, Hills Bank was appointed executor of his estate, and the bank contemplated a sale of the land in order to satisfy the indebtedness owed against it.

---

* Senior Judge from the 2nd Judicial District serving on this court by order of the Iowa Supreme Court.

Gary Anderson was interested in purchasing the property at the time, and in December 1984 he went to the Federal Land Bank Association of Cedar Rapids (FLBA–CR) where he spoke with Dale Boeke, a loan officer. At this meeting, lasting fifteen to thirty minutes, Anderson made an inquiry about a loan. Anderson did not bring any financial documents or any other documents with him to this meeting. Toward the end of the meeting, Boeke gave Anderson a Federal Land Bank of Omaha (FLB–O) loan application and a balance sheet form, which were to be completed by Anderson if he chose to request a loan. Anderson never completed or returned any of these loan papers.

In January 1985 Donald Lamp, a proposed purchaser of the Nebergall property, met with Boeke and discussed the possibility of Lamp obtaining a loan from Eastern Iowa Production Credit Association (PCA) to purchase the Nebergall property. At this time Lamp agreed to sell Boeke 82.5 acres of the 680 acres Lamp proposed buying from the estate. Lamp made an offer on the property, and the offer was submitted to the probate court for approval.

In February 1985 Anderson again met with Boeke in the parking lot of FLBA–CR's field office in Tipton, Iowa. Anderson expressed an interest in obtaining a loan to purchase the Nebergall real estate. Between the time of the first meeting in December 1984 and the second meeting in February 1985, Anderson had no discussions with Boeke or any other employee of FLBA–CR. At this second meeting, Boeke told Anderson he believed the Nebergall property had already been sold subject to court approval in a hearing set for February 25, 1985. Boeke further told Anderson to come back to inquire about getting a loan if the sale was not approved.

Before this hearing, Lamp and Anderson signed an agreement negotiated by their attorneys providing Esther Nebergall (Anderson's aunt) would receive sixty acres free and clear, Anderson would get five acres for $6,250 and could pay Lamp by trading labor, and Lamp would get the balance of the real estate to deal with as he wished. At the court hearing on February 25, Lamp was approved as the purchaser; Anderson had withdrawn an earlier objection to Lamp purchasing the property. At this time Lamp had a PCA loan commitment for financing. On March 1, 1985, a warranty deed was filed which conveyed part of Lamp's purchase to Boeke and his wife. Boeke's purchase of this land was financed entirely by the Hills Bank and Trust Company, which took a second mortgage on his home as additional security. Lamp's PCA loan was approved on May 23, 1985.

Three months later the PCA loan was accepted by FLB–O, all negotiations being handled by an officer other than Boeke because of the conflict of interest involved. Approximately one year later the Nebergall fiduciary filed a final report, and Anderson filed an objection. Following a hearing, the district court, on August 1, 1986, overruled Anderson's objection finding Anderson consented to the sale to Lamp. *See In re Conservatorship of Nebergall,* Probate No. 14041 (Cedar County, Iowa 1986). This case was affirmed on appeal by the court of appeals in an unpublished opinion. *See In re Conservatorship of Nebergall,* 428 N.W.2d 319 (Iowa App. 1988).

In March 1989 the Andersons filed this petition at law seeking compensatory and punitive damages from Boekes and the Federal Land Bank of Omaha. The Andersons contend Boeke steered financing to Lamp instead of the Andersons so Boeke could repurchase the portion of the property he wanted from Lamp.

Specifically, the Andersons argue Boeke arranged for Lamp to receive interim financing for six to eight weeks from the PCA sufficient for Lamp to purchase the Nebergall property by assuring the PCA that if they issued the loan commitment Lamp needed to finance the land, the FLB–O would ultimately refinance the loan, thereby relieving the PCA of any long-term risk. The Andersons claim Boeke intentionally concealed the Boeke–Lamp agreement from them, and the Andersons state they approved of the farm sale without

knowing about the agreement. If they had known about the agreement, the Andersons contend, they would have done more to stop the sale to Lamp, and they would not have made the prehearing agreement with Lamp prior to the court's approval of the sale.

Although Boeke worked for the Federal Land Bank Association of Cedar Rapids and not the Federal Land Bank of Omaha, the Andersons argue a sufficient agency relationship existed between Boeke and the FLB-O. Both the FLB-O and Boekes filed separate motions for summary judgment, and the district court granted both motions. With respect to the FLB-O's motion, the court found no evidence of an agency relationship between Boeke and the FLB-O. Regarding Boekes, the court determined Anderson made no real effort to secure a loan to purchase the farm. In addition, the court found no fiduciary relationship between Anderson and Boeke and no resultant damage to Anderson due to the sale to Lamp. The Andersons have filed this appeal.

Summary judgment is appropriate only if there exists no genuine issue of material fact. *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact. *Id.* The evidence must be viewed in the light most favorable to the nonmoving party. *Thorp Credit, Inc. v. Gott*, 387 N.W.2d 342, 343 (Iowa 1986). This procedure is functionally akin to a directed verdict, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the nonmoving party. *Id.* A fact issue is generated if reasonable minds can differ on how the issue should be resolved. *Id.* If the conflict in the record consists only of legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Milne*, 424 N.W.2d at 423.

However, the nonmoving party may not simply rest on its pleadings and allegations once a motion for summary judgment is filed.

When a motion for summary judgment is made and supported as provided in [Iowa R.Civ.P. 237], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Iowa R.Civ.P. 237(e).

## I.  *Agency Relationship*

### A.  Agency as a Matter of Law

■ The Andersons contend Boeke steered financing to Lamp so he could purchase the Nebergall property and sell 82.5 acres to Boeke. Anderson further asserts Boeke used his position as an employee at FLBA-CR to foreclose Gary Anderson's loan possibilities and influence PCA and FLB-O to prefer Lamp to Boeke's advantage and Anderson's disadvantage.

The Andersons argue Boeke's activities established an agency relationship between FLB-O and FLBA-CR subjecting FLB-O to liability for the alleged damages caused by FLBA-CR imputed to it through the actions of its employee, Boeke. Anderson alleges liability from Boeke through FLBA-CR to FLB-O.

Understanding the legal relationship between FLB-O and FLBA-CR requires a brief discussion of the legal structure of the Farm Credit System. Congress established the Farm Credit System as a nationwide network of federally chartered privately held cooperative lending institutions. Federal Farm Loan Act, Pub.L. No. 158 § 4, 39 Stat. 360, 362 (1916). The Federal Land Bank Associations were originally created by section 7 of the Federal Farm Loan Act and were continued in the Farm Credit Act of 1971, Pub.L. No. 92–181, § 1.13, 85 Stat. 587 (1971), codified in 12 U.S.C.S. § 2031. The system divided the United States into twelve farm credit districts. In *Amarillo Prod. Credit Ass'n v. Farm Credit Admin.*, 887 F.2d 507 (5th Cir.1989), the court explained the system in the following manner:

Each district had a Federal Intermediate Credit Bank (FICB), which made short and intermediate term loans to Production Credit Associations (PCAs). PCAs then loaned money directly to farmers, ranchers, and fisherman. Additionally, each district had a bank for cooperatives and a Federal Land Bank (FLB), which made long-term agricultural and rural housing loans through Federal Land Bank Associations (FLBAs) in each district. *See* House Report, *reprinted in* 1985 U.S.Code Cong. & Admin.News at 2591–92. On July 6, 1988 each FLB merged with each FICB in its district to become a Farm Credit Bank (FCB). Agricultural Credit Act of 1987, Pub.L. No. 100–233, § 410, 101 Stat. 1568, 1637 (1988) (codified at 12 U.S.C. § 2011).

The system's structure has long been based on financial interdependence. The member banks were initially supplied with start-up capital from the U.S. Treasury. House Report, *reprinted in* 1985 U.S.Code Cong. & Admin.News at 2591. System borrowers directly or indirectly have an ownership interest in the lending institutions, since borrowers must purchase voting stock in proportion to the amount loaned. *See* 12 U.S.C. §§ 2034 (omitted 1988), 2130 (amended 1988), 2094(f) (amended 1988), 2073(g) (amended 1988). Borrowers may also be required to make additional stock purchases when necessary for bank operations. *See id.* §§ 2130 (amended 1988), 2094(h) (amended 1988), 2073(g) (amended 1988). Additionally, system lending activities are funded through the sale of consolidated and systemwide notes, bonds, and discount notes (System Securities) through a service corporation that acts as a fiscal agent for all System banks. *Id.* §§ 2153 (amended 1988), 2160 (amended 1988). All banks are jointly and severally liable on System Securities. *Id.* § 2155 (amended 1988).

*Amarillo,* 887 F.2d at 508–09.

■ Federal Land Banks and the Federal Land Bank Associations are distinct and separate entities. *Federal Land Bank of Columbia v. Gaines,* 290 U.S. 247, 250–51, 54 S.Ct. 168, 169, 78 L.Ed. 298, 299 (1933).

In creating these separate legal entities of borrower-owned organizations, Congress declared, "It is the objective of this [Act] to continue to encourage farmer- and rancher-borrowers participation in the management, control, and ownership of a permanent system of credit for agriculture...." 12 U.S.C. § 2001(b) (1988); *FDIC v. Langley,* 792 F.2d 547, 549 (5th Cir.1986). The *Langley* court commented on the relationship between the district Federal Land Banks and the local Federal Land Bank Associations:

> Consequently, the only persons eligible to own stock in the Associations are the borrowers. 12 U.S.C. § 2034. The Associations are governed by boards of directors elected by their shareholders-borrowers. 12 U.S.C. §§ 2032, 2033. The Associations function in the farm credit system by accepting applications to the Federal Land Bank for the district in which an Association is located. Thus, the Supreme Court in *Gaines,* noting this separate nature of the Associations from the Federal Land Banks, held that an Association could not be deemed the agent of a Federal Land Bank in disbursing the proceeds of a loan. 290 U.S. at 254, 54 S.Ct. at 171. *See also Federal Land Bank of New Orleans v. Jones,* 456 So.2d 1 (Ala.1984).

*Langley,* 792 F.2d at 549.

Applying the legal structure of the Farm Credit System to the facts in the present case illustrates that at the time of Boeke's alleged misconduct, December 1984 through March 1985, the Federal Land Bank of Omaha was one of the twelve district banks. The FLB–O had a territory of certain midwest states, including Iowa. A number of Federal Land Bank Associations existed within the district of the Federal Land Bank of Omaha, one of which was the Federal Land Bank Association of Cedar Rapids.

Functionally, this meant the FLBA–CR received long-term loan applications to be forwarded to the FLB–O. The FLBA–CR's stock belonged to its borrowers who elected their own board of directors. As the Supreme Court in *Gaines* noted, due to the

separate nature of the Associations from the Federal Land Banks, an Association could not be deemed the agent of a Federal Land Bank in disbursing the proceeds of a loan. *Gaines*, 290 U.S. at 254, 54 S.Ct. at 171, 78 L.Ed. at 301.

Boeke was an employee of FLBA–CR and not an employee of of FLB–O. After thoroughly reviewing the record in light of the above discussion, we find no agency relationship existed as a matter of law between the FLB–O and the FLBA–CR and, consequently, no such relationship existed between Boeke and the FLB–O.

### B. Agency Implied-in-Fact

■ *Gaines* left open the possibility an implied-in-fact agency could exist between an association and a district federal land bank. *See Gaines* 290 U.S. at 254, 54 S.Ct. at 171, 78 L.Ed. at 301. The Andersons argue if such a relationship can exist between an association and its district land bank, then such a relationship can exist between the association's employee (Boeke) and the district bank (FLB–O). "The burden of proving a principal and agent relationship is upon the party asserting such a relationship." *Martin v. Jaekel*, 188 N.W.2d 331, 333 (Iowa 1971). There must be substantial evidence bearing on the existence of a principal-agent relationship to generate a jury question; a mere scintilla is not enough. *Id.* at 333–34.

■ The fighting issue in proving agency is whether the alleged agent is subject to the control of the principal. *Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 788–90 (Iowa 1985). The record viewed in the light most favorable to the Andersons on the issue of the existence of a principal-agent relationship between Boeke and FLB–O compels the conclusion there is insufficient evidence to submit the question of agency to the trier of fact.

The Andersons argue Boeke was subject to the FLB–O's control during the period in question. However, the record is void of any substantial evidence establishing an agency relationship between Boeke and the FLB–O. In December 1984 Anderson spoke to Boeke at the FLBA–CR at which time Anderson inquired about a loan. Boeke gave Anderson a FLB–O loan application and a balance sheet form, which were to be filled out by Anderson if he chose to request a loan. Anderson never completed or returned any of the loan papers to Boeke or anyone else at the FLBA–CR. In January 1985 Boeke met with Lamp to discuss the possibility of Lamp obtaining a loan to purchase the Nebergall property. By the time Anderson returned in February 1985, Lamp's offer on the Nebergall property had already been submitted to the probate court for approval. Between the time Anderson first met with Boeke in December 1984 and their second meeting in January 1985, Anderson had no further discussion with Boeke or any other employee of the FLBA–CR. At this second meeting Boeke informed Anderson the Nebergall property had been sold subject to the probate court's approval.

Never at any time did Anderson apply for a loan to purchase the Nebergall property. Never at any time did Anderson seek the probate court's approval to purchase the property himself. In fact, Anderson consented to Lamp's purchase of the property subject to their prehearing settlement agreement. To contend an agency relationship existed between the FLB–O and Boeke, when Anderson never applied for a loan or took any steps toward this end beyond acquiring a loan application, extends the legal concept beyond reasonable limits.

### II. *Fiduciary Relationship*

■ The Andersons contend Boeke breached a fiduciary duty owed to them. We find the establishment of a fiduciary relationship between Boeke and the Andersons is not supported by substantial evidence. The Iowa Supreme Court has stated:

A fiduciary relationship has been generally defined in this way:

A fiduciary relationship exists between two persons when one of them is under a *duty* to act for or to give advice for the benefit of another *upon matters within the scope* of the relation. Restatement

(Second of Torts § 874 comment a, at 300 (1979) (emphasis added).

*Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986).

Some of the indicia of a fiduciary relationship include the acting of one person for another; the having and exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another.

*Irons v. Community State Bank,* 461 N.W.2d 849, 852 (Iowa App.1990).

"Because the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case." *Kurth,* 380 N.W.2d at 696. The court in *Kurth* continued:

It is difficult to categorize the relationships of banks with their customers insofar as any fiduciary duty is concerned. Banks and their customers develop relationships on various levels, and the services provided to any particular customer will vary. [Citation omitted.] As a general rule, however, a fiduciary duty or confidential relationship does not arise solely from a bank-depositor relationship. [Citations omitted.]

*Id.* at 696.

In the present case the acts about which the Andersons complain arose prior to a lender-borrower relationship being created. In fact, no such relationship ever existed between Gary Anderson and Boeke or the FLBA–CR at any time. In effect, Anderson was never a customer of the FLBA–CR since he never applied for any loans there. Even if Anderson is considered to have been the FLBA–CR's customer, it is clear no relationship ever developed. In either event, the Andersons have failed to set forth specific facts which constitute competent evidence indicating a genuine issue of material fact exists regarding the presence of a fiduciary duty.

### III. *Fraud*

■ To show fraud, the plaintiff must establish: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage. *Robinson v. Perpetual Servs. Corp.,* 412 N.W.2d 562, 565 (Iowa 1987); *Cornell v. Wunschel,* 408 N.W.2d 369, 374 (Iowa 1987); *Beeck v. Kapalis,* 302 N.W.2d 90, 94 (Iowa 1981). The plaintiff's reliance must be justifiable. *Beeck,* 302 N.W.2d at 94. The representation or promise need not be an affirmative misstatement. Fraud can also arise from the failure to disclose material facts. *Sinnard v. Roach,* 414 N.W.2d 100, 105 (Iowa 1987).

The misrepresentation or failure to disclose material facts must relate to a material matter which is known by the party. The party must have a legal duty to communicate the information to the other party. Such a duty can arise from a relation of trust, a relation of confidence, inequality of condition and knowledge, or other circumstances as shown by a particular fact situation.

*Irons,* 461 N.W.2d at 854. The burden is on the plaintiff to establish fraud by a preponderance of clear, satisfactory, and convincing evidence. *Robinson,* 412 N.W.2d at 565; *Cornell,* 408 N.W.2d at 374.

■ The Andersons maintain Boeke made a fraudulent affirmative misrepresentation to them by telling them the Nebergall property was sold subject to the probate court's approval. In addition, they contend Boeke's failure to inform them about Lamp's financing to purchase the property and Boeke's interest as ultimate purchaser constitutes fraudulent omissions of material facts. Assuming Boeke's statement was false in accordance with the requirement to view the evidence in a light most favorable to the Andersons, the Andersons have nevertheless failed to generate substantial evidence concerning the elements of reliance and damage.

The record illustrates the Andersons did not rely on Boeke's statement that the property had already been sold; instead, the Andersons attempted to stop the sale. Prior to the February 25, 1985, hearing date, Gary Anderson filed an objection to the sale of the Nebergall property, requesting the matter be set for hearing at which time testimony could be introduced. This objection was later withdrawn by Anderson, and he subsequently *consented*

to the sale of the property before the hearing by entering into a settlement agreement with Lamp which was negotiated by the parties' attorneys. The agreement overtly stated Lamp was to receive the balance of the real estate—which did not go to either Gary Anderson or Esther Nebergall—*to do with as Lamp wished.*

Anderson's act of entering into such an agreement clearly indicates he was not concerned about what would happen to the balance of the property Lamp was to receive. For Anderson to now argue he would have done more to stop the sale of the real estate if he would have known that Boeke—and not Lamp—was going to receive a portion of the land is absurd. Anderson received the five acres in which he was interested. These acts, coupled with Anderson's failure to ever apply for a loan—anywhere—to purchase the Nebergall property, indicate Anderson's lack of interest in purchasing the property. The record indicates Anderson received the portion of property he wanted; he was not damaged by the ultimate division of the Nebergall real estate.

In accordance with the above discussion, we affirm the district court's decision granting summary judgment in favor of both Boekes and the Federal Land Bank of Omaha.

AFFIRMED.