MARY JACOBS, Appellant, v. MARCUS SNYDER, Appellee.

Mortgage: FORECLOSURE: FRAUD: EVIDENCE.

*Appeal from Dickinson District Court.*—HON. GEORGE H. CARR, Judge.

FRIDAY, MAY 15, 1891.

THIS is an action in equity to set aside a decree of foreclosure and a sheriff's sale of real estate. After a full hearing on the merits, the district court dismissed the petition, and rendered judgment in favor of certain of the defendants for costs. The plaintiff appeals. *Affirmed.*

*Wishard & Bailey,* and *A. W. Osborne,* for appellant.

*Parker & Richardson,* for appellee.

ROBINSON, J.—In June, 1875, the plaintiff was the owner of the southwest quarter, section 7, township 100, range 35, in Dickinson county. On the twenty-second day of that month she made to the defendant, Marcus Snyder, her four promissory notes amounting to three hundred and forty-two dollars, and to secure their payment she and her husband, Fred. Jacobs, executed a mortgage upon the land described. On the ninth day of September, 1878, judgment by default was rendered by the circuit court of Dickinson county in favor of said Snyder, and against the plaintiff on account of said notes for the sum of four hundred and sixty-eight dollars and eleven cents, an attorney's fee of one hundred dollars, and twenty dollars costs, and a decree foreclosing the mortgage was rendered against the plaintiff, her husband and one C. H. Hunt. A special execution for the sale of the land was issued, and the land was sold thereunder to said Marcus Snyder. He assigned the certificate of purchase to his wife, the defendant, Oceana Snyder, and on the sixteenth day of October, 1879, a sheriff's deed for the land was issued to her, and on the next day it was recorded. In January, 1884, Mrs. Snyder and her husband conveyed the land to Minnie Jacobs, a daughter of the plaintiff, and received from said grantee her note for six hundred dollars, secured by a mortgage on the land, and a small interest note. The notes so given have been paid. Minnie Jacobs and Fred. Jacobs are also made parties defendant, but disclaim any interest adverse to the plaintiff. This cause was considered by this court on a former appeal. 76 Iowa, 523.

The appellant contends that after the action to foreclose was commenced by Snyder, in the year 1878, he agreed with her to dismiss the proceedings: that, relying upon his agreement, she did not appear in said proceedings, but believed they had been dismissed, until January,

1884, when she first discovered that Mrs. Snyder held a deed for the farm in question. She further claims that a large part of the mortgage indebtedness had been paid when judgment was rendered against her, for which she was given no credit, and that, without knowing of the judgment and sale, she continued to make payments on the mortgage indebtedness until it had been fully satisfied; that she at all times retained possession of the land; that when she discovered the condition of the title, in 1884, she demanded a conveyance of the land to her, and that Snyder agreed it was to be made; that being ignorant of such matters, and unable to read or write, she supposed that the instruments to which her daughter was a party were the conveyance she was to receive. She claims that Snyder accomplished the alleged wrong by means of the ignorance of herself and husband, their inability to read or write any language, and the confidential relation in which he stood to them, and their faith in his integrity. There is much conflict in the evidence, but we think the preponderance shows the material facts of the case to be substantially as follows:

In the year 1876 the plaintiff and her husband moved from the land in question to Ft. Dodge, where they remained until the next spring. From Ft Dodge they went to Des Moines; from there to Rippey, in Greene county; from Rippey back to the land, in the spring of 1879; and there they have since resided. When they left the farm in 1876, they were indebted to different persons in various sums, in addition to the mortgage debt, and owned some personal property which was sold, the proceeds being paid to Snyder. They also held claims for small sums of money which were collected by Snyder. He purchased some of the claims against Jacobs, and kept an account of all money received and all payments made. He charged interest at usurious rates on sums due him, and for a time indorsed payments made on the notes he held. He paid the taxes on the land, and purchased some claims against Jacobs at a discount, by his direction. Before commencing proceedings to foreclose his mortgage he notified the plaintiff and her husband that he should foreclose unless further payments were made. In the latter part of the year 1876, a second mortgage on the land in favor of Hunt was executed by the plaintiff and her husband for the sum of one hundred and twenty-five dollars. After the proceedings to foreclose had been commenced in 1878, they went from Rippey to Spirit Lake to make a settlement with Snyder. It was then agreed between the plaintiff and Snyder that the indorsement of payments made on the mortgage notes should be erased, and a judgment taken for the amount which appeared to be due on them, and a sale had for the purpose of defeating the lien of the Hunt mortgage. Snyder was to keep an account of payments to be received, and cause a conveyance to be made for the benefit of the plaintiff when he should be fully paid the amount due him. The decree of foreclosure was taken, and sale made, and a sheriff's deed taken pursuant to that agreement. Among the items charged by Snyder were the costs of the foreclosure, and thirty-five dollars for an

attorney's fee; that being the amount actually paid in lieu of the one hundred dollars allowed by the court. In January, 1884, there was a settlement between the parties which resulted in the giving of the deed to Minnie Jacobs, and the making of her notes and mortgage already described. The notes and mortgage she gave were sold by Snyder to one McCulla, and some of the interest which fell due was paid him. Legal proceedings were instituted to enforce payment, and the entire claim was finally paid.

It quite clearly appears that no confidential relations existed between Snyder and the plaintiff and her husband when foreclosure proceedings were commenced in 1878. The plaintiff and her husband consulted attorneys, and were fully informed as to their rights It is shown by the correspondence and admissions and other evidence that they were fully aware of the fact that Snyder controlled the title to the land. When the settlement was made in January, 1884, a disinterested person was present, who assisted, at the instance of both parties. He took down all items given by Snyder from his accountbook, often ascertaining that they were satisfactory, and computed their amounts, and ascertained the balance due Snyder. The claim that the plaintiff believed the instruments to which her daughter was a party were, in effect, a deed to herself, is not credible. She insists that the instruments were not read, but does not claim to have asked that they be read, although her daughter was a school-teacher, and no doubt able to read intelligently. She alleges that her daughter did not know the contents of the instruments, but Snyder testifies that she read them, and the testimony of the daughter is not offered. If the plaintiff had ever placed special confidence in Snyder, she had no reason for doing so in January, 1884, if her testimony be true, for she claims to have discovered before that time that he had violated his agreement, and had acted in bad faith toward her. But we do not think the bad faith alleged has been established. There is much testimony as to the numerous items making up the account between the parties, and it may be that some slight errors were made, but nothing has been shown which would justify the setting aside of the settlement. The plaintiff had good reason to complain of the exorbitant rate of interest which she was charged, but that was fully settled in the transaction with her daughter, and cannot be successfully questioned in this action.

We conclude that the judgment of the district court is correct. It is, therefore, AFFIRMED.