**William D. KURTH, Trustee of Herman B. Gerdes Trust, et al., Appellees,**

**First Miss, Inc.; Grettenberg's, Inc.; and Glen Lowman, agent, Cross-Appellants,**

v.

**Robert VAN HORN and First National Bank in Glidden, Appellants.**

No. 84–963.

Supreme Court of Iowa.

Jan. 15, 1986.

Rehearing Denied Feb. 25, 1986.

Brent B. Green and Sam F. Scheidler, of Gamble, Riepe, Webster, Davis & Green, Des Moines, and Raymond O. Snook, of Snook Law Office, Glidden, for appellants.

James R. Van Dyke, of Van Dyke & Werden, P.C., Carroll, for appellees and cross-appellants.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, CARTER, and WOLLE, JJ.

LARSON, Justice.

Thomas P. Hall, a Glidden area farmer, became financially strapped and asked his landlord, Herman B. Gerdes, to help him get a loan from the defendant bank. Gerdes agreed to do so and cosigned, with Hall, a note to the bank, secured by a mortgage on farmland owned by Gerdes. Gerdes then turned the proceeds over to Hall. Shortly afterward, Gerdes died. The trustee of the Herman B. Gerdes Trust, and two beneficiaries of the Gerdes estate, sued the bank and its president, Robert Van Horn (hereinafter referred to jointly as the bank), alleging fraud and breach of fiduciary duty. They demanded damages, both actual and punitive, and cancellation of the Gerdes mortgage. Other creditors of Hall joined the action as plaintiffs, claiming Hall and the bank had conspired to defraud them of the amounts owed them on their accounts.

Hall was originally a defendant but was released by the plaintiffs prior to trial, leaving only the bank and Van Horn as defendants.

The suits on account were dismissed on a motion for directed verdict. On the claims against the bank by the Gerdes trust and the beneficiaries of the Gerdes estate (hereinafter referred to jointly as Gerdes), the jury found no fraud. It did, however, find a breach of fiduciary duty by the bank, returning a verdict for actual and punitive damages. The district court, acting in equity, then granted Gerdes' request to cancel the real estate mortgage.

The bank filed notices of appeal from these judgments (the one granting actual and punitive damages and the one canceling the real estate mortgage). The account claimants appealed from the order for directed verdict. By order of this court, the three separate appeals were consolidated. (Although the account claimants filed an independent appeal, they refer to themselves as cross-appellants, and we will so consider them on appeal.)

On appeal, the bank asserts: (1) the court erred in overruling the bank's motion for directed verdict based on insufficiency of the evidence to support a finding of fiduciary duty; (2) that, assuming there was sufficient evidence to submit the issue, the court erred in its instruction on the elements necessary to establish a fiduciary relationship; (3) that the court erred in submitting the issue of punitive damages and in allowing interest on the punitive damages from the date of the filing of the action. Because of our disposition of the case under the first of these issues, it is unnecessary to address the remaining two.

In its separate appeal from the order in equity, the bank contends that, because there was insufficient evidence of the existence of a fiduciary duty, the court erred in canceling its real estate mortgage from Gerdes. The account claimants assert error in granting the directed verdict in their action based on alleged conspiracy.

### I. *The Law Action.*

We first address the issues raised under the law claim of breach of fiduciary duty. At the close of the plaintiffs' evidence, the bank moved for directed verdict on the ground there was not sufficient evidence upon which a jury could reasonably find a fiduciary relationship existed between the bank and Gerdes. The court reserved ruling. The issue was raised again, after all the evidence, and was denied. Motions for new trial and judgment notwithstanding the verdict, based on this ground, were also denied.

The legal principles regarding the evidence required to withstand a motion for a directed verdict have been summarized by several recent cases. Each element of a claim must be supported by substantial evidence. If not, a directed verdict or a judgment notwithstanding the verdict is appropriate. *Valadez v. City of Des Moines,* 324 N.W.2d 475, 478 (Iowa 1982). If reasonable minds could differ on an issue under the evidence presented, it is properly submitted to a jury. *Larsen v. United Federal Savings & Loan Association,* 300 N.W.2d 281, 283 (Iowa 1981). When considering a motion for directed verdict or judgment notwithstanding the verdict, we must, of course, consider the evidence in the light most favorable to the party against whom the motion is directed.

A fiduciary relationship has been generally defined in this way:

A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.

Restatement (Second) of Torts § 874 comment a, at 300 (1979). A fiduciary relationship has also been defined as

[a] very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one man trusts in or relies upon another. One founded on trust or confidence reposed by one person in the integrity and fidelity of another. A "fiduciary relation" arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal. Such relationship ex-

ists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other.

Black's Law Dictionary 564 (5th ed. 1979) (citations omitted).

Some relationships necessarily give rise to a fiduciary relationship. Such relationships would include those between an attorney and client, guardian and ward, principal and agent, executor and heir, trustee and *cestui que trust. Id.*

> Some of the indicia of a fiduciary relationship include the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another.

*First Bank of Wakeeney v. Moden,* 235 Kan. 260, 262, 681 P.2d 11, 13 (1984) (per curiam). *See generally* 36A C.J.S. *Fiduciary,* at 386–87 (1961). Because the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case. Annot., 70 A.L. R.3d 1344, 1347–48 (1976).

It is difficult to categorize the relationship of banks with their customers insofar as any fiduciary duty is concerned. Banks and their customers develop relationships on various levels, and the services provided to any particular customer will vary. Budnitz, *The Sale of Credit Life Insurance: The Bank as Fiduciary,* 62 N.C.L.Rev. 295 (1984). As a general rule, however, a fiduciary duty or confidential relationship does not arise solely from a bank-depositor relationship. *See Manson State Bank v. Tripp,* 248 N.W.2d 105, 108 (Iowa 1976); *Davis Brothers & Potter v. Fort Dodge National Bank,* 216 Iowa 277, 279, 249 N.W. 170, 171 (1933); *Leach v. First National Bank,* 206 Iowa 265, 270, 217 N.W. 865, 868 (1928); *Andrew v. Colorado Savings Bank,* 205 Iowa 872, 875, 219 N.W. 62, 64 (1928). *See generally* Annot., 70 A.L.R.3d at 1347; 10 Am.Jur.2d *Banks*

§ 339, at 301–02 (1963); 9 C.J.S. *Banks & Banking* § 273, at 556–59 (1938). Bank cases based on breach of fiduciary duty must, of course, be distinguished from those based on fraud. *See, e.g., First National Bank in Lenox v. Brown,* 181 N.W.2d 178 (Iowa 1970).

The plaintiffs in the present case acknowledge it to be the general rule that a fiduciary relationship does not automatically arise through the relationship of banker and depositor but asserts that the rule should be different when the customer becomes a borrower. In this case, they allege that there was sufficient evidence to warrant a jury in finding that such a relationship existed. They point to the fact that Gerdes was eighty years old, that he was pressured by Hall to make the loan, that frequent visits were made by Hall to the bank, and that the bankers had intimate knowledge of Hall's financial problems. With these contentions in mind, we look to the evidence in the case to establish the basis for the fiduciary relationship.

Hall had financial difficulties well before the note in question was executed. According to the record, he faced possible foreclosure as early as 1975. Van Horn, as his banker, was naturally aware of his financial condition. It is also clear that Gerdes knew of Hall's financial condition. In 1976, the record showed Van Horn knew that Hall's debt had reached more than 150 percent of his asset value. Before Gerdes leased his land to Hall, the land was farmed by Gerdes' only son, Charles, who was killed in an automobile accident in 1970. After that time, according to the plaintiffs, "Hall endeared himself to Herman Gerdes and tried to take the place of Gerdes' son." The record shows that apparently there was a mutual feeling in that respect. Gerdes granted Hall more favorable terms under his lease than he had with his own son. At one point, according to Hall's testimony, Gerdes even suggested he would like to move into the Hall home. According to the plaintiffs, Hall began pressuring Gerdes for a loan as Hall's December 1, 1977 payment date approached.

According to the plaintiffs, Hall talked with Gerdes every time he came to Hall's farm.

In November, 1977, Gerdes was admitted to a hospital with a diagnosis of "gastritis with anxiety state and some manifestations of depression." He was discharged from the hospital and went to a nursing home. He left the nursing home soon afterwards and returned to his own home. There was no showing of any physical or mental impairment of Gerdes at the time of the loan in question. On March 25, 1978, Hall brought Gerdes to the bank for a meeting with Van Horn, and according to the plaintiffs, during the early part of 1978, Van Horn and Hall were in almost daily communication concerning his loan affairs. According to the record, Van Horn was attempting to get a renewal of the FmHA loan, but a renewal was denied because of Hall's insolvent condition.

Van Horn wrote numerous letters on behalf of Hall, both in trying to get an FmHA extension and to apply for the SBA disaster loan. Van Horn apparently assisted Hall in preparing several SBA applications. On March 25, 1978, Van Horn received a letter reaffirming FmHA's denial of the extension. On that same day, Hall brought Gerdes to the bank for the purpose of discussing the loan with Van Horn. Van Horn testified that he suggested to Gerdes that he return at a future time so that he could discuss the matter with Gerdes outside the presence of Hall. Apparently there were two meetings of this kind involving only Gerdes and Van Horn. Van Horn testified he showed Herman Gerdes the entire financial file of Tom Hall including all of Hall's financial statements. (While the plaintiffs point out that there were inconsistencies in the financial statements, they do not claim, nor does it appear, that this fact was in any way withheld from Gerdes.) Apparently it was on Herman Gerdes' third visit to the bank, on March 31, 1978, when a commitment was made to execute the loan.

The plaintiffs complain that, in the meetings between Van Horn and Hall, the fact was not pointed out to Gerdes that the bank might lose its FmHA guarantee of eighty percent under some circumstances; that the banker did not reveal that the obtaining of the SBA loan would reduce the bank's minimum liability from twenty percent to zero and that the bank would use Gerdes' money to pay off $10,000 in loans previously written off. The evidence is clear, however, that Gerdes understood the purpose of the loan was to free the farm equipment of Hall so that it could be pledged as security for the SBA loan. It is not claimed there was any misrepresentations as to that fact.

As it turns out, of course, the loan was ill-advised. Gerdes was perhaps, as suggested by the plaintiffs, pressured by Hall to enter a loan which was doomed to fail. On the other hand, no one seems to dispute that Hall was the source of the problem in this case. The problem with the plaintiffs' approach is that nowhere is there evidence that Gerdes relied upon the bank to render its advice in connection with this loan. Nor, do we believe, there was any showing that the bank misled Gerdes in any way. The purpose of the loan, to release the farm equipment, was made clear to Gerdes. This was done, and Hall's farm equipment was released from the FmHA loan as planned.

The bank should not be held liable for merely permitting Gerdes and Hall to implement their plan by interceding and preventing the consummation of these loan documents.

Plaintiffs suggested at oral argument that Van Horn should have refused to conclude this loan until Gerdes had secured legal counsel. We believe, however, that this form of protectionism goes far beyond the exercise of the banker's responsibility in this case and its failure to do so does not amount to a breach of fiduciary duty. The bank had no affirmative duty to prevent Gerdes from doing what the evidence clearly shows he wanted to do.

Although, as we have pointed out, it is difficult to categorize cases because of the diverse nature of fiduciary duties and the

general principle that each case must be decided on its own facts, some cases are analogous on their facts. One is the case of *Denison State Bank v. Madeira*, 230 Kan. 684, 640 P.2d 1235 (1982). There the Denison State Bank had a customer in the car business who was in serious financial straits. A potential buyer came along, and the bank entered into a loan with the new buyer without disclosing all of the seller's financial picture, allegedly including the fact that some of the assets of the former owner had already been assigned to another creditor. The court pointed out that the concept of a fiduciary duty is an equitable one, without precise definition or strict parameters. It noted the general rule that a bank does not owe a fiduciary duty to its customers and concluded that the buyer of the business in that case was capable of discovering the assignment of these proceeds and other financial problems including substantial overdrafts at the bank, by examination of the car dealer's records from whom he was buying the business. It referred to the general rule that a bank does not owe a fiduciary duty to its customers. The court said:

> A fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another.* A fiduciary is a person with a duty to *act primarily for the benefit of another.* A fiduciary is in a position to have and exercise, and does *have and exercise influence over another.* A fiduciary relationship implies a condition of *superiority of one of the parties over the other.* Generally, in a fiduciary relationship, the property, interest or authority of the other is *placed in the charge of the fiduciary.*

*Id.* at 692, 640 P.2d at 1241 (emphasis in original). The court in *Denison State Bank* held as a matter of law that a fiduciary duty had not been established and reversed a judgment previously entered in favor of the bank customer.

It is undisputed that, from the time Hall and Gerdes entered into their lease arrangement, Gerdes was aware of Hall's financial condition. There is no evidence that the bank ever acted as an investment advisor for Gerdes. In fact, apparently Gerdes hardly knew Van Horn at all. He had only been a depositor at the bank. Prior to the Hall loan, Gerdes had never borrowed money from the bank or, apparently, from any other source. The record also shows that, while Gerdes had been hospitalized and was eighty years old, he was mentally astute and well oriented at the time of this transaction.

■ We believe in this case that the record fails to show substantial evidence that the customer relied upon the bank for advice in connection with this transaction or that, even if such reliance was placed in the bank, the bank was aware of it. In addition, even if such reliance was placed in the bank and accepted by it, there is no substantial evidence that the bank failed to disclose the relevant facts necessary to make an informed decision.

We reverse on the claim of breach of fiduciary duty.

## II. *Cancellation of the Real Estate Mortgage.*

■ As already noted, the trial court sitting simultaneously with the law action as a court of equity entered an order canceling this mortgage on the basis it had been obtained by the bank through a breach of its fiduciary duty to Gerdes. Because we have concluded there was no fiduciary duty established, the basis for cancellation of the mortgage no longer exists. We conclude that it was error to order it canceled.

## III. *The Appeal by the Account Plaintiffs.*

■ On the appeal by the account plaintiffs, based upon a conspiracy to defraud, we conclude summarily that there was not enough evidence to support this claim, and the district court properly dismissed it.

We reverse on the appeals of the bank and Van Horn and affirm on the "cross-appeal" by the account plaintiffs.

REVERSED ON APPEAL; AFFIRMED ON CROSS-APPELLANTS' APPEAL.