# IN THE COURT OF APPEALS OF IOWA

No. 15-2015
Filed January 25, 2017

**URBANDALE BEST, LLC and URBANDALE WEST, LLC,**
    Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**R&R REALTY GROUP, LLC, R&R REAL ESTATE INVESTORS, LLC, and PMR REALTY GROUP, LLC,**
    Defendants-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

A member of multiple LLCs appeals the verdicts in a bench trial involving the managing member of the LLCs, and the managing member cross-appeals. **AFFIRMED IN PART, REVERSED IN PART ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

Michael A. Dee and Haley R. Van Loon of Brown, Winick, Graves, Cross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellant.

George A. LaMarca and Ryan C. Nixon of LaMarca Law Group, P.C., Des Moines, for appellee.

Heard by Vogel, P.J., Vaitheswaran, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**VOGEL, Presiding Judge.**

Urbandale Best, LLC and Urbandale West, LLC (collectively the Urbandale entities) appeal the district court's verdicts in a bench trial involving R&R Realty Group, LLC (R&R), R&R Real Estate Investors, LLC (REI), and PMR Realty Group, LLC (PMR) (collectively the R&R entities). Specifically, the Urbandale entities claim the district court erred in: (1) failing to remove REI as a managing member of Paragon West for a breach of fiduciary duty involving personal profit; (2) failing to remove REI as a managing member of Paragon West for failing to make reasonable efforts to correct its breach of the operating agreement; (3) concluding residential apartment development was within the ordinary course of business of Paragon Best; and (4) failing to award Urbandale West attorney fees. The R&R entities cross-appeal the district court's determinations that REI breached its fiduciary duty and that Urbandale West did not breach its fiduciary duty or duty of good faith and fair dealing by failing to cooperate with the financing of a retail office building.

I.    Background Facts and Proceedings

Since approximately 2006, the Urbandale entities[1] have been joint owners of various real estate development companies with the R&R entities. Two jointly-owned entities are relevant to this matter: Paragon West, LLC and Paragon Best, LLC. Paragon West, formed in 2006, is jointly-owned by Urbandale West and REI with REI serving as the managing member. Paragon Best was also formed

---

[1] The Urbandale entities are wholly-owned by Kansas City Life Insurance Company (KCL). Tracy Knapp is President of Urbandale West and Urbandale Best, as well as Senior Vice President and Chief Financial Officer of KCL.

in 2006 and is jointly-owned by Urbandale Best and R&R with R&R serving as the managing member.

Paragon West owns real property at the corner of 128th Street and Meredith Drive in Urbandale. The land is divided into multiple parcels. Paragon West's predecessor, 128th Street LLC, sold a portion of one of the parcels, known as the "Dahl's Property" to Foods Inc., prior to the formation of Paragon West. Foods's purchase of the Dahl's Property was subject to a developer agreement that required the parcel to be developed as a grocery and convenience store and included a right of Paragon West to repurchase if Foods failed to do so. Urbandale West was aware of this agreement when it formed Paragon West with REI.[2]

In 2012, Foods informed REI that it was not going to develop the land as a grocery and convenience store, and REI relayed the information to Urbandale West. Thereafter, Paragon West's potential repurchase of the Dahl's Property was discussed in Paragon West's quarterly meetings and listed in Paragon West's monthly marketing reports. In April 2014, Foods informed REI they needed to sell the Dahl's Property within the next thirty days. By this time, the relationship between the Urbandale entities and the R&R entities had deteriorated to the point the R&R entities no longer wanted to acquire land with the Urbandale entities unless they were legally required to.

---

[2] In 2009, Foods and Paragon West performed a land swap, in which Foods exchanged one portion of the parcel for another. The swap included the same development restriction and right to repurchase as the original sale, with Paragon West substituted for 128th Street LLC.

In May 2014, PMR, an affiliate of REI, made an offer to Foods to purchase the Dahl's Property. PMR and Foods negotiated over the next couple of months, and in June 2014, Foods sold the Dahl's property to PMR. Along with a purchase agreement, the sale included a release, which relieved Foods and its successors and assigns, including PMR, from any obligation to provide Paragon West with a right to repurchase the Dahl's Property.

Prior to making the offer, Steve Gaer, General Counsel and Chief Operating Officer of REI, examined the Paragon West operating agreement and the development agreement with Foods and determined an R&R entity could purchase the Dahl's Property without including Urbandale West in the purchase and Paragon West did not have a right to repurchase. Gaer sought out an opinion from William Bartine, outside legal counsel for Paragon West, as well as for REI, R&R, and PMR. Bartine testified that he "was asked not to bend over backwards but was asked to be fair" in his analysis. Ultimately, Bartine reached the same conclusion as Gaer. At no point prior to the sale did REI inform Urbandale West that another R&R affiliate was in negotiations to purchase the Dahl's Property. In the May and June 2014 monthly reports for Paragon West, REI included the potential Dahl's Property repurchase on the agenda. REI did not disclose that the property had been sold until the July monthly report and meeting, which was the first monthly report and meeting post-closing.

On July 24, 2014, Urbandale West sent a letter to REI alleging REI had violated the Paragon West operating agreement and usurped a corporate opportunity that belonged to Paragon West in selling the property. REI followed with a letter denying Urbandale West's allegations and claiming REI was

authorized to execute the release.[3] On July 18, 2014, the Urbandale entities filed a petition, which they followed with an amended petition on August 15, seeking a declaratory judgment that REI violated the Paragon West operating agreement and requesting REI be removed as managing member of Paragon West for cause. After this suit was filed, REI sent Urbandale West a letter on August 27, which offered them the opportunity to purchase a fifty-percent stake in the Dahl's Property and provided the property would be transferred to Paragon West at closing.

Another dispute between the Urbandale entities and the R&R entities was occurring simultaneous to the above-described dispute. This second dispute involved Paragon Best, an entity jointly-owned by Urbandale Best and R&R. As the managing member, R&R is responsible for the day-to-day operations of Paragon Best. However, the Paragon Best operating agreement also contains a section that describes "major decisions" that require unanimous approval. Section 4.4(a)(13) of the Paragon Best operating agreement requires unanimous approval of the members for "[a]ny transaction not in the ordinary course of business or affairs of the Company."

Paragon Best owns real property in Urbandale within an area known as the Highland Pointe Office Park. On June 26, 2014, R&R, as a member of Paragon Best, submitted a proposal to Urbandale Best to build a multi-family apartment and commercial unit on part of the property. Urbandale Best did not wish to participate in the proposal. R&R then expressed its intent to purchase

---

[3] This letter was the first time Urbandale West was told about the release.

the land from Paragon Best, which it believed it was entitled to do under section 4.6 of operating agreement:

> In the event that a Member desires to have the Company construct a new project on land owned by the Company, such Member shall submit a written proposal to the other Member and that Member shall have twenty-one (21) days to approve or reject said proposal. In the event that R&R and KCL disagree respecting any new construction project upon any unimproved land owned by the Company, the party wishing to undertake such new construction shall have the right to purchase such unimproved land from the Company at FMV, for cash, within one hundred twenty (120) days of such disagreement . . . .

In its amended petition filed on August 15, Urbandale Best sought a declaratory judgment that section 4.6 did not apply because R&R's proposal fell outside the ordinary course of business of Paragon Best and therefore required unanimous approval from both members of Paragon Best.

The R&R entities filed counterclaims, which injected another dispute into the litigation. The R&R entities alleged Urbandale West breached its duty of good faith and fair dealing in rejecting a financing proposal submitted by REI related to a retail office building in a parcel owned by Paragon West. In 2008, REI submitted a project proposal, which Urbandale West accepted, that contained the following language regarding financing:

> The budget includes a 6-month construction period plus a 12-month lease up period. We will plan to seek project specific long-term financing at a fixed rate upon stabilization, depending on the capital markets at that time. Due to the nature of the project, consideration may need to be given to both recourse and non-recourse options.

In 2014, REI submitted a long-term financing proposal to Urbandale West, which included the possibility of recourse financing and a prepayment penalty. Urbandale West rejected the proposal, citing concerns about the possibility of the

loan requiring riskier personal guarantees, trouble attracting tenants to the space, and the interest rate.

Following a three-day bench trial in May 2015, the district court issued a written ruling containing its detailed findings of fact and conclusions of law on September 3, 2015. Regarding the Dahl's Property, the court concluded Paragon West had the right to repurchase the property and the opportunity to do so was a corporate opportunity for Paragon West. Accordingly, the court concluded REI breached its fiduciary duty by usurping a corporate opportunity of Paragon West. However, the court refused to remove REI as managing member of Paragon West because it concluded REI's breach did not "involve personal profit." It further concluded REI made a reasonable effort to correct its breach by sending the August 27 letter offering Urbandale West a chance to buy into the Dahl's Property.[4]

Regarding R&R's apartment proposal for Paragon Best, the court determined the operating agreement neither specifically permitted nor prohibited proposals to develop residential projects. The court noted there was evidence Urbandale Best was not interested in developing residential projects and likely would not have joined Paragon Best had it known residential development was a possibility. However, there was also evidence R&R would not have joined Paragon Best had it known residential development was not an option. Ultimately, the court held the unspoken intent of the parties did not override the express language of the contract or lack thereof and that the ordinary course of business for Paragon Best was "to develop the property and maximize the return

---

[4] The district court's ruling was supplemented by a 1.904(2) ruling on October 26, 2015.

on the investment." Therefore, the district court found the apartment proposal was in the ordinary course of business for Paragon Best and R&R had the option to purchase the property from Paragon Best when Urbandale Best refused to consent to the project.

Regarding REI's counterclaims involving the financing proposal for the retail building in Paragon West, the district court found financing proposals were a "major decision" under the agreement, which required unanimous consent and Urbandale West had valid business reasons for rejecting the proposal, including concerns about incurring further debt. Both parties appeal.

II.     Standard of Review

We review bench trials involving breach-of-contract claims for errors at law. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). The district court's factual findings are treated as a special verdict and are binding on us so long as they are supported by substantial evidence. *Id.* We are not bound by the district court's legal conclusions and application of the law, and we will reverse if the court applied erroneous rules of law, which materially affected its decision. *Id.*

Generally, both contract interpretation and construction are legal issues. *Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008). "The cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract." *Id.* "Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." *Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 618 (Iowa 1999). "These rules of interpretation

are general in character and only serve as guides in the process of interpretation." *Pillsbury Co.*, 752 N.W.2d at 436.

We review a district court's decision regarding attorney fees for abuse of discretion. *NevadaCare, Inc.*, 783 N.W.2d at 469.

III.     Dahl's Property—REI Breach of Fiduciary Duty and Removal as Managing Member

Urbandale West claims the district court correctly determined REI violated its fiduciary duty in allowing PMR to purchase the Dahl's Property without notice to Urbandale West but argue the court erred in failing to remove REI as a managing member of Paragon West. Specifically, Urbandale West asserts REI's breach of fiduciary duty was one "involving personal profit" under the operating agreement, thereby justifying REI's removal. REI takes the opposite position on both issues, claiming the district court erred in determining REI violated its fiduciary duty but was correct in refusing to remove REI as the managing member of Paragon West. Specifically, REI asserts: (1) the plain language of the agreement did not require it to notify Urbandale West of the sale; (2) Paragon West's right to repurchase was not triggered; (3) its duties were reasonably restricted under the agreement; and (4) it acted in good faith and reasonably relied on outside counsel's advice.

Generally, "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986). Iowa Code section 489.409(8)(a) (2014) provides that a manager in a manager-managed LLC owes the company and the members the

fiduciary duties of loyalty and care. The duty of loyalty includes protecting the LLC from the appropriation of a company opportunity. Iowa Code § 489.409(2)(a)(3).

Neither party disputes that a fiduciary relationship existed between them, though REI claims the duty was limited and that it acted in good faith. Section 7.5 of the Paragon West operating agreement specifies an aspect of that relationship, in providing:

> The Members agree that in the event a Member ("Opportunity Member") or any of its Affiliates has an opportunity to acquire other real property in the Exclusive Area (defined below), such Opportunity Member shall give the other Member ("Receiving Member") the first right before any other person or entity ("Right of Opportunity") to join with such Opportunity Member in said acquisition opportunity . . . .

The district court analyzed section 7.5, along with the development agreement, and concluded REI violated its fiduciary duty to Urbandale West in proceeding with the sale of the Dahl's property to PMR. In doing so, the court rejected REI's claims that the plain language of section 7.5 did not require it to notify Urbandale West, that Paragon West's right to repurchase had not been triggered, and that its duties were limited under the operating agreement. The court stated:

> REI used its affiliate PMR to purchase the Dahl's Property when the availability of that land was an opportunity for Paragon West and where Paragon West had a right to repurchase. The acquisition of property and its development is the heart of the business of Paragon West, and Paragon West was clearly financially able to undertake the acquisition.

We agree with the district court. Initially, we reject REI's claim that Paragon West's right to repurchase the Dahl's property had not been triggered. As the district court noted:

The Amended and Restated Development Agreement (Exhibit 19) grants Paragon West rights of repurchase and first refusal regarding the Dahl's Property. Paragon West's rights are contingent upon an "Event of Repurchase" occurring. The clear meaning of the "Event of Repurchase" definitions is the failure of Dahl's to construct a grocery and/or convenience store, or, if constructed, the cessation of use of the property for those purposes, triggers Paragon West's rights to repurchase that property.

Foods's notice to REI, in its capacity as the managing member of Paragon West, which REI then passed along to Urbandale West, that it did not intend to build a grocery store on the property and wished to sell, effectively ended any chance that a Dahl's grocery and convenience store would be built on the property and triggered Paragon West's right of repurchase. This conclusion is grounded in the plain language of the development agreement, as well as the actions of Urbandale West and REI over the next several months in discussing potential future development of the Dahl's Property in their capacities as members of Paragon West. These actions indicate both parties believed Paragon West held the right to repurchase and are evidence of the intent of the right to repurchase section of the development agreement. Further, REI's interpretation of the right to repurchase section is incongruous with both the plain language of the specific clause at issue here and the general purpose of such clauses.

We also agree that REI's actions fell within the scope of section 7.5 and that it violated its fiduciary duty of loyalty in appropriating a corporate opportunity of Paragon West by facilitating the purchase of the Dahl's property by PMR. Again, we find REI's argument that section 7.5 only applies if an R&R entity seeks a partner in purchasing property incongruous with the plain language of the section, and we strain to see why a sophisticated commercial entity such as

Urbandale West would agree to a section that was to be interpreted in such a way.

As we agree with the district court that REI breached its fiduciary duty of loyalty, we next turn to Urbandale West's claim that the district court erred in failing to remove REI as the managing member of Paragon West. Urbandale West asserts REI should have been removed for cause because it committed a breach of fiduciary duty "involving personal profit."

Section 4.1 of the operating agreement allows the managing member to be removed for cause. The agreement defines cause, in part, as "a breach of fiduciary duty involving personal profit." The district court determined REI had not gained a profit from the purchase of the Dahl's Property and refused to remove them as managing member. Following Urbandale West's 1.904(2) motion, the court agreed that the appropriate question was whether the breach "involved" personal profit, not whether REI "gained" a profit. Ultimately, the court concluded that the distinction did not make a difference and again refused to remove REI as a managing member.

We agree that the crucial question is whether REI's breach "involved" personal profit. Neither party offered a definition of "involved" or "involving" from Iowa courts. Urbandale West combines multiple cases from other jurisdictions and proposes a definition of "involving" that includes: "actions related to, accompanied by, connected with, having an effect on, having the natural or logical consequence of, implying, or broadly applying to personal profit." We are persuaded by the United States Court of Appeals for the Eighth Circuit's analysis in *Wintermute v. Kansas Bankers Surety Co.*, 630 F.3d 1063, 1072-73 (8th Cir.

2011), which noted that "involving" was a broader term compared to "in fact." Consequently, we believe "closely related" is an appropriately plain and adequately broad definition of "involving." *Involve*, Webster's Third New Int'l Dictionary (3rd ed. 2003).

Here, REI breached its fiduciary duty by failing to protect a company opportunity that belonged to Paragon West and steering that opportunity toward an entity it was affiliated with. REI's officers testified that the ultimate goal of acquiring the Dahl's Property was to earn a profit.[5] Accordingly, REI's breach was "closely related" to personal profit and "involved" personal profit. We conclude, under Section 4.1 of the operating agreement, the district court should have removed REI as a managing member of Paragon West for cause, and we reverse as to this issue.[6]

IV.     Apartment Proposal–Paragon Best

Urbandale Best argues the district court erred in concluding residential apartment construction fell within the ordinary course of business of Paragon Best. Specifically, Urbandale Best asserts the operating agreement only specifically references office, flex, retail, and industrial fees and expenses and they have never developed residential projects in their joint ventures with the R&R entities. R&R argues the agreement did not restrict the possibility of a

---

[5] We note that while almost every action of a for-profit entity has a goal of making a profit, it does not necessarily follow that every breach of a fiduciary duty will be related to a goal of earning a profit. For example, had REI simply failed to protect Paragon West's right to repurchase and allowed Foods to sell the Dahl's Property to an unrelated third-party, REI still may have breached its fiduciary duty, but it would not have done so "closely related" to or "involving" personal profit.

[6] As we conclude REI should have been removed for a breach of fiduciary duty involving personal profit, we need not address Urbandale West's claim the district court erred in refusing to remove REI as a managing member because of an uncured material breach.

residential project and a mixed-use project best served the purpose of Paragon Best.

Section 2.3 of Paragon Best's operating agreement provides:

> The purpose and character of the business of the Company shall be to (a) invest in and own the Projects, (b) acquire, own, sell, exchange and dispose of, or otherwise deal with the Projects, (c) borrow funds required by the ownership of the Projects and mortgage, pledge or otherwise encumber any and all Company property in connection with any such borrowings of funds, (d) do all things necessary or appropriate to effect any part or all of the foregoing, (e) maximize the return on the capital invested in the Company by the Members, consistent with the foregoing, and (f) engage in such other activities and businesses as all of the Members may from time to time Approve.

Generally, this clause makes plain the purpose of Paragon Best was to invest in real estate, develop real estate, and maximize return on its investments. Section 4.3 of the agreement incorporates a fee schedule that established property management and development fees for office, retail, flex, and industrial. Urbandale Best claims this fee schedule restricted residential developments because it did not contain a fee for residential development. The language of the operating agreement is silent on residential development.

Our review of the operating agreement and the incorporated exhibits leads us to the same conclusion the district court reached. The language of the operating agreement neither expressly permits nor prohibits the development of a residential project. The district court generally found both parties credible—Urbandale Best never intended to permit residential projects and R&R never intended to restrict them—and we find no reason to differ with the court's perception of the parties' intent. Yet, neither party articulated their intent to the other nor specifically memorialized it in the operating agreement. Absent such

clarity, the parties' unspoken and inconsistent intent is not sufficient to outweigh the words and purpose of the agreement. *See Fausel*, 603 N.W.2d at 618 ("Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight."). Based on section 2.3, we conclude the general purpose of Paragon Best was to invest in real estate, develop real estate, and maximize return on its investments. It is plausible that a residential or mixed-use development could very well serve that purpose, and absent a specific limitation, we cannot conclude that such a development is outside the ordinary course of business of Paragon Best. We affirm the district court.

V.      The Financing Proposal—Paragon West

REI argues Urbandale West breached its fiduciary duties and acted in bad faith by rejecting the long-term financing proposal for the Paragon West office building. Urbandale West asserts it had valid business reasons for rejecting the proposal.

Iowa Code section 489.409(4) outlines the duty of good faith and fair dealing a member of an LLC owes: "A member in a member-managed limited liability company or a manager-managed limited liability company shall discharge the duties under this chapter or under the operating agreement and exercise any rights consistently with the contractual obligation of good faith and fair dealing." Despite the acrimonious relationship that existed between the parties at the time, the record does not indicate any bad faith on the part of Urbandale West in rejecting the financing proposal, and the concerns it cited—namely, the method of financing, the interest rate, and further debt-incursion when the space was

struggling to attract tenants—are valid business concerns related to a specific proposal.[7] We affirm.

VI.    Attorney Fees

Urbandale West argues the district court erred in denying their request for attorney fees because REI's breach forced them to seek counsel and protect their legal rights.  REI claims Urbandale West was not entitled to attorney fees.

Generally, attorney fees are not awarded in contract cases unless specifically authorized by the contract.  *NevadaCare, Inc.*, 783 N.W.2d at 469–70.  Iowa Code section 625.22 provides: "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court."  The Paragon West agreement did not contain a provision for the award of attorney fees.  Therefore, we find the district court did not abuse its discretion in refusing to award them.

VII.    Conclusion

Because we conclude REI breached a fiduciary duty involving a personal profit, we reverse the district court's decision refusing to remove it as a managing member of Paragon West.

Because we conclude the apartment proposal was part of the ordinary course of business of Paragon Best, Urbandale West's rejection of the financing

---

[7] As the district court noted, those concerns may not apply to every financing option.

proposal was not in violation of its fiduciary duties, and Urbandale West was not entitled to attorney fees, we affirm the district court on all other counts.

**AFFIRMED IN PART, REVERSED IN PART ON APPEAL; AFFIRMED ON CROSS-APPEAL**