# IN THE COURT OF APPEALS OF IOWA

No. 20-1700
Filed December 15, 2021

**BETHANY LUTHERAN HEALTH SERVICES,**
     Plaintiff-Appellee,

**vs.**

**PATRICIA CUMPSTON,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Jeffrey L. Larson, Judge.

Patricia Cumpston appeals from the order finding her responsible for the outstanding balance owed to Bethany Lutheran Health Services. **AFFIRMED.**

Amanda Heims, Council Bluffs, for appellant.

Jennifer E. Lindberg and Jordan D. Nickerson of Brown, Winick, Graves, Gross and Baskerville, P.L.C. and Emily S. Hildebrand Pontius and Brandon R. Underwood of Fredrikson & Byron, P.A., Des Moines, for appellee.

Heard by Mullins, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

Bethany Lutheran Health Services (Bethany Lutheran) filed suit against Patricia Cumpston seeking to recover amounts owed by her late husband. The district court found the amounts owed were reasonable and necessary family expenses under Iowa Code section 597.14 (2018) and entered judgment against Cumpston for the amounts owed. Cumpston appeals. She argues section 597.14 was not properly before the court, the amounts Bethany Lutheran charged were not family expenses, and Bethany Lutheran breached a fiduciary duty it owed to her. We reject Cumpston's arguments and affirm.

**I.     Background Facts and Proceedings.**

Bethany Lutheran is a residential facility located in Council Bluffs that specializes in providing assisted living and skilled therapy and nursing services. In March 2017, Cumpston, acting as an authorized representative for her husband, Dean, executed a residency agreement for her husband to reside at and receive care from Bethany Lutheran. At the time, Cumpston and Dean had been married for more than fifty years.

In August 2017, Cumpston, assisted by her daughter, completed and submitted her first application for Medicaid assistance to pay for Dean's charges incurred at Bethany Lutheran. The Iowa Department of Human Services (DHS) responded with a request for additional information. The DHS later denied the first application for failure to provide the requested information.

Cumpston approached Lisa Hough, an accounting associate for Bethany Lutheran, for help with a new Medicaid application. In November 2017, Hough and Cumpston completed and submitted a second Medicaid application. The DHS

again requested additional information, which Cumpston and Hough provided. The DHS later denied the second application because the Cumpstons' income was above the Medicaid income limit. Hough directed Cumpston to an attorney to establish a Miller Trust[1] in order to keep their income within the Medicaid limit.

In January 2018, after establishing a Miller Trust, Hough and Cumpston completed and submitted a third Medicaid application. The DHS again requested additional information and later denied the application because the Cumpstons' total resources were above the Medicaid resource limit.

In late February or early March 2018, Cumpston met with an attorney to seek assistance qualifying for Medicaid. The attorney testified Cumpston was concerned Bethany Lutheran "wanted her to use all of her money." Cumpston's resources at the time included a recent insurance settlement check for $19,017.37 to pay for repairs from storm damage to her home. The attorney testified this check should have been excluded from Cumpston's resources when applying for Medicaid.[2] The attorney further testified, "I told [Cumpston] not to pay [Bethany Lutheran] until we got information on the Medicaid application."

Nevertheless, Cumpston continued working with Hough to qualify for Medicaid. For the next application, Hough testified:

> [Cumpston] needed to [spend] down about $19,000 in order to get to the threshold. I think it was nineteen seven something, and one of the options I gave her was to write a check to [Bethany Lutheran]

---

[1] Hough testified a Miller Trust "makes the State of Iowa the beneficiary on any funds left in that account after the resident's passing. It allows them basically to make too much money but still get approved for Medicaid." The DHS's request for information advised Cumpston to establish a Miller Trust due to the couple's reported income.

[2] A representative from the DHS agreed a recent insurance check to repair damage to a home is excludable when calculating resources for Medicaid eligibility.

because it would cash right away and it would be applied to Dean's old balance with us. That would immediately put her down at the threshold limit—at the resource limit.

On March 5, Cumpston wrote a check to Bethany Lutheran for $19,700.00, which reduced her resources at the time to below the Medicaid resource limit. That same day, Hough and Cumpston submitted a fourth Medicaid application, which the DHS denied because resources for Medicaid eligibility are measured as of "the first moment of the first day of the month."

On March 21, the attorney and Cumpston submitted Cumpston's fifth Medicaid application. After requesting and receiving additional information, the DHS approved the Medicaid application on April 19.

Following Dean's death in July 2018, Bethany Lutheran filed a petition against Cumpston seeking to recover Dean's unpaid balance owed to Bethany Lutheran under theories of breach of contract and unjust enrichment. Cumpston filed a separate petition against Bethany Lutheran claiming breach of fiduciary duty, negligence, and unjust enrichment related to Bethany Lutheran's actions while Cumpston attempted to qualify for Medicaid. The district court consolidated the two petitions into the current action. Both parties moved for summary judgment, which the court denied.

The case went to trial. About one week after the trial finished, Bethany Lutheran moved for leave to amend its petition to add a claim for recovery under Iowa Code section 597.14 (2018). Two months after that, the district court issued its order finding Cumpston liable for Dean's expenses owed to Bethany Lutheran under section 597.14 and rejecting all other claims from both parties. The court

ordered Cumpston to pay damages of $16,933.48. Cumpston appeals the finding of liability under section 597.14 and the denial of her fiduciary-duty claim.

**II.      Standard of Review.**

The parties disagree on the standard of review. "Generally, we will hear a case on appeal in the same manner in which it was tried in the district court." *Johnson v. Kaster*, 637 N.W.2d 174, 177 (Iowa 2001). To determine whether a proceeding was at law or equity, we consider "[t]he pleadings, relief sought, and nature of the case" as well as "whether the court ruled on evidentiary objections." *Nelson v. Agro Globe Eng'g, Inc.*, 578 N.W.2d 659, 661 (Iowa 1998).

Bethany Lutheran captioned its petition "at law," and it primarily asserts a contract claim, which is typically heard at law. *See Van Sloun v. Agans Bros.*, 778 N.W.2d 174, 178 (Iowa 2010). Cumpston's petition does not specify at law or equity, though her claims—and Bethany Lutheran's unjust-enrichment claim—are typically heard in equity. *See Mendenhall v. Judy*, 671 N.W.2d 452, 454 (Iowa 2003) (finding a fiduciary-duty claim was heard in equity); *Iowa Waste Sys., Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 30 (Iowa 2000) (finding "a claim for unjust enrichment is rooted solely in equitable principles" and is typically heard in equity). Both petitions primarily request money damages but also request any other relief the court deems appropriate. The court ruled on evidentiary objections at trial; however, the court sustained few objections, and those it did sustain were mostly directed at keeping the parties focused on the issues and the trial moving rather than excluding substantively inadmissible evidence.

While we are not convinced the proceeding was heard in equity, we will nevertheless apply de novo review because of the closeness of the question and

the fact "our ultimate resolution of [the issues] is the same under a de novo review as it would be under a review for correction of errors of law." *City of Davenport v. Shewry Corp.*, 674 N.W.2d 79, 82 (Iowa 2004). Applying de novo review, we give weight to the fact findings of the district court, especially regarding the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

## III. Analysis.

### A. Liability Under Iowa Code Section 597.14

The district court awarded Bethany Lutheran damages under section 597.14, which states, "The reasonable and necessary expenses of the family . . . are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately." Cumpston challenges whether this claim was properly before the court and whether the charges for which Bethany Lutheran sought damages were "reasonable and necessary expenses of the family."

#### 1. Pleading the Section 597.14 Claim

Cumpston argues section 597.14 "was not properly before the court." The exact nature of Cumpston's argument is unclear. Cumpston asserts "[i]t was extremely prejudicial for the district court to seemingly allow" Bethany Lutheran's post-trial amendment to add a section 597.14 claim. However, as Cumpston recognizes, the court only "seemingly allow[ed]" the amendment. The court never explicitly permitted Bethany Lutheran to plead a section 597.14 claim, as the court failed to rule on Bethany Lutheran's post-trial motion for leave to amend its petition. If the court had granted Bethany Lutheran's motion for leave to amend, we would review that decision for abuse of discretion. *See Scott v. Grinnell Mut. Reins. Co.*,

653 N.W.2d 556, 561 (Iowa 2002). However, because the court failed to rule on Bethany Lutheran's motion, we have no decision to review.

While Cumpston filed a resistance to Bethany Lutheran's motion for leave to amend, she never raised—and the district court never ruled on—her claim to us that section 597.14 was not properly before the court. In order to argue this issue on appeal, Cumpston was required to file a rule 1.904(2) motion to bring the issue to the court's attention and preserve the issue for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002). Without a ruling on the issue by the district court, any claim that section 597.14 was not a proper ground for the court's ultimate order is not preserved for our review. *See id.*

Furthermore, even if the district court impliedly granted Bethany Lutheran's motion for leave to amend by awarding damages under section 597.14, the court is entitled to "considerable discretion in ruling on motions for leave to amend pleadings." *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 766 (Iowa 2002); *see also* Iowa R. Civ. P. 1.402(4) ("Leave to amend, including leave to amend to conform to the proof, shall be freely given when justice so requires."). The court should permit an amendment to the petition unless the amendment "substantially changes the issues" and results in prejudice or unfair surprise to the non-moving party. *Rife*, 641 N.W.2d at 767.

Bethany Lutheran's amendment may have substantially changed the issues because its original breach-of-contract and unjust-enrichment claims did not require proof that the Cumpstons were married when the charges were incurred or that the charges were "reasonable and necessary expenses of the family." *Compare* Iowa Code § 597.14, *with Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786

N.W.2d 839, 846 (Iowa 2010) (providing elements for breach of contract), *and Endress v. Iowa Dep't of Hum. Servs.*, 944 N.W.2d 71, 80 (Iowa 2020) (providing elements for unjust enrichment); *see also Davis v. Ottumwa Young Men's Christian Ass'n*, 438 N.W.2d 10, 14 (Iowa 1989) (in finding a post-trial motion for leave to amend should have been granted, noting "[t]he evidence supporting and refuting the [original] and [amended] claims would be virtually identical"). Nevertheless, the amendment did not cause Cumpston prejudice or unfair surprise. Bethany Lutheran first referred to section 597.14 in its reply addressing the pending summary judgment motions well before trial. In denying summary judgment, the district court noted section 597.14 "permits [Bethany Lutheran] to bring an action against [Cumpston] for her husband's unpaid balance," even though at the time section 597.14 was an unpled claim distinct from breach of contract and unjust enrichment. In an order on a motion to reconsider its summary judgment order, the court again stated Bethany Lutheran "retains the right to bring action against [Cumpston] for the balance under" section 597.14. Also, at the start of the trial, the court reiterated "it appears to the court [Cumpston] would be liable under Iowa Code section" 597.14.[3] Given the court's statements alerting the parties to the applicability of section 597.14, Cumpston could not have suffered prejudice or unfair surprise when Bethany Lutheran sought to add a section 597.14 claim after trial. Furthermore, Cumpston never asked for a continuance or to reopen the record to address the substance of Bethany Lutheran's section 597.14 claim. *See Smith v. Vill. Enters., Inc.*, 208 N.W.2d 35, 38 (Iowa 1973) (in finding no abuse of

---

[3] The court apparently misidentified the section number at trial, but the context makes clear the court was referring to section 597.14

discretion in granting leave to amend, noting the appellant "did not ask permission to reopen in order to introduce what is now claimed to be vital evidence"). Even on appeal, Cumpston offers no persuasive factual or legal argument to deny the substance of Bethany Lutheran's section 597.14 claim if given the opportunity to do so at trial. Therefore, even if the district court impliedly granted Bethany Lutheran's motion for leave to amend, we find no abuse of discretion in doing so.

### 2. Expenses of the Family

Cumpston argues the expenses charged by Bethany Lutheran are not "reasonable and necessary expenses of the family" under section 597.14. Long ago, our supreme court observed:

> The term "family expense" has not been very clearly defined in our cases, and perhaps no definition should be attempted. Generally speaking, the only criterion which the statute furnishes is that the account must be for items of goods furnished for and on account of the family, and to be used therein. No limitation is put upon the expenditures, and it need not appear that they be "necessaries," as that term is generally used. It has been held that a cook stove and fixtures, wardrobes, bureaus, bedsteads, organs, watches, and other jewelry, medical services, wearing apparel, etc., are family expenses. It is essential, of course, that the expenditures be for property which was used or kept for use in the family. But a reaping machine or other agricultural implements, used by the husband in the prosecution of his business of farming, rent of a farm, medical assistance to a husband away from home, or money borrowed to pay for goods furnished the family, are not properly chargeable as family expenses.

*McDaniels v. McClure*, 120 N.W. 1031, 1032 (Iowa 1909) (citations omitted); *see also In re Marriage of Erpelding*, 917 N.W.2d 235, 240 n.2 (Iowa 2018) (stating section 597.14 codifies the basic principle "that a spouse is obligated to support the other spouse").

The district court found Dean's balance owed to Bethany Lutheran constitutes "medical expenses" for which Cumpston is liable. While "medical expenses" are not defined or even mentioned in section 597.14, Cumpston recognizes "[m]edical and hospital expenses" are recoverable under the statute. *St. Luke's Med. Ctr. V. Rosengartner*, 231 N.W.2d 601, 602 (Iowa 1975). Nevertheless, Cumpston notes Bethany Lutheran's charges under the admission agreement include "room, meals, nursing and personal care, cable, and other personal services such as laundry, maintenance, and housekeeping." Cumpston argues these nursing home expenses do not qualify as recoverable medical and hospital expenses.

Cumpston testified about the course of events that resulted in Dean staying at Bethany Lutheran. According to her testimony, Dean fell at home, was immediately taken to the hospital for a stay of about one month, and then "they"— meaning hospital staff—placed Dean at Bethany Lutheran "because that was the only home that opened up." Cumpston's testimony indicates Bethany Lutheran provided a continuation of Dean's hospital care. While Bethany Lutheran's expenses included a room for Dean, this room was necessary for his medical care at Bethany Lutheran and not realty that lacked any benefit to the family. *See Scheiz v. McMenamy*, 48 N.W. 806, 806 (Iowa 1891) (concerning a realty lease the husband signed in his name only, finding the wife not liable for the lease during the period she did not live on the premises). Cumpston argues Dean was "involuntarily" placed at Bethany Lutheran, but the record shows Bethany Lutheran was one of a limited number of providers able to care for Dean and Cumpston was free to place Dean at another facility or even at home if she could have secured

the necessary care. *See Delaware Cnty. V. McDonald*, 46 Iowa 170, 171 (1877) (finding the husband not liable for care the wife received while committed at a "hospital for the insane provided by the State"). We agree Bethany Lutheran's charges were reasonable and necessary family expenses, and we affirm that Cumpston is liable under section 597.14 for Dean's outstanding balance owed to Bethany Lutheran.

## B.    Fiduciary Duty

Cumpston argues Bethany Lutheran had a fiduciary duty to her, which it breached during the Medicaid application process. Cumpston specifically argues Bethany Lutheran breached its duty to her when it repeatedly failed to properly complete the Medicaid applications and "erroneously required [Cumpston] to write a check for $19,700."[4]

"A fiduciary relationship exists between two persons 'when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 52 (Iowa 2003) (quoting *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986)). "Because the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual

---

[4] Bethany Lutheran argues we have no authority to consider Cumpston's fiduciary-duty claim because Cumpston failed to exhaust her administrative remedies by appealing the denials of her Medicaid applications. *See Ghost Player, LLC v. State*, 860 N.W.2d 323, 326 (Iowa 2015) ("When a party fails to exhaust all of its required administrative remedies, the court has no authority to hear the case . . . ."). Bethany Lutheran cites no authority to support its argument that failure to exhaust administrative remedies relieves an alleged fiduciary from any duty to assist the complainant with the agency action. Thus, we will consider the merits of Cumpston's fiduciary-duty claim.

case." *Id.* (quoting *Kurth*, 380 N.W.2d at 696). To establish a fiduciary relationship, courts look for: "the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another." *Id.* (quoting *Kurth*, 380 N.W.2d at 696). As the party claiming a fiduciary relationship, Cumpston must prove Bethany Lutheran acted in a fiduciary role. *Id.*

Hough repeatedly testified she merely "assisted" Cumpston with the Medicaid applications and completed the applications using information Cumpston provided. Cumpston testified to her independence, including that she alone decided to pay $19,700.00 to Bethany Lutheran. Cumpston emphasizes her age and lack of knowledge to us, but she testified she has no disability that would prevent her from making decisions. The court, having observed Cumpston's testimony, necessarily agreed Cumpston can make her own decisions when it rejected her fiduciary-duty claim, and we place weight on the court's assessment. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) ("We are denied the impression created by the demeanor of each and every witness as the testimony is presented.").

Cumpston notes the residency agreement explicitly allows Bethany Lutheran to apply for Medicaid on Dean's behalf. However, this agreement does not create a fiduciary relationship with Cumpston because she is not a party to the agreement. Cumpston also notes Hough suggested actions for Cumpston to take in order to qualify for Medicaid, such as establishing a Miller Trust and paying Bethany Lutheran to reduce her resources, which goes beyond merely completing

the applications using information Cumpston provided. The district court found these actions "may have been irresponsible," and we agree. However, the record does not show Bethany Lutheran was in such a dominant position over Cumpston as to create a fiduciary relationship. Therefore, we agree Cumpston failed to prove her fiduciary-duty claim.

**V.** **Conclusion.**

We find Cumpston failed to preserve her argument that section 597.14 was not properly before the court. Even if she did, the district court did not abuse its discretion in impliedly permitting Bethany Lutheran's post-trial amendment asserting a section 597.14 claim, as Cumpston suffered no prejudice or surprise. Further, Bethany Lutheran's charges were for reasonable and necessary expenses of the family for which Cumpston was responsible. Finally, Cumpston failed to prove Bethany Lutheran owed her a fiduciary duty in applying for Medicaid. Therefore, we affirm.

**AFFIRMED.**